OSCN Case Details                                               Page 1 of 12



OKLAHOMA
State Courts Network

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE DISTRICT COURT IN AND FOR <u>TULSA COUNTY</u>, OKLAHOMA

| | |
|---|---|
| KLM GROUP LP, F/K/A<br>ROYAL MFG CO LP,<br>     Plaintiff, and<br>KLM MANAGEMENT LLC, F/K/A<br>ROYAL HOLDINGS LLC,<br>     Plaintiff, and<br>RIVERCREST LLC,<br>     Plaintiff,<br>v.<br>AXEL ROYAL LLC,<br>     Defendant. | **No. CJ-2018-5049**<br>**(Civil relief more than $10,000: BREACH OF**<br>**AGREEMENT - CONTRACT)**<br><br>Filed: 12/13/2018<br><br><br>Judge: Morrissey, Linda G. |

## PARTIES

AXEL ROYAL LLC, Defendant
KLM GROUP LP, Plaintiff
KLM MANAGEMENT LLC, Plaintiff
RIVERCREST LLC, Plaintiff

## ATTORNEYS

| Attorney | Represented Parties |
|---|---|
| ANDERSON, ELLIOT P (Bar #21098)<br>CROWE & DUNLEVY<br>321 S BOSTON AVENUE<br>STE 500<br>TULSA, OK 74103 | AXEL ROYAL LLC, |
| ROSELL, ARMANDO J (Bar #18821)<br>101 N ROBINSON AVE STE700<br>OKC, OK 74127 | KLM GROUP LP,<br>KLM MANAGEMENT LLC,<br>RIVERCREST LLC, |

| Attorney | Represented Parties |
|---|---|
| Wisley, Paul Joshua (Bar #19602)<br>4375 N VANTAGE DR, SUITE 405<br>FAYETTEVILLE, AR 72701 | |

## EVENTS

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Wednesday, April 17, 2019 at 1:30 PM<br>    SCHEDULING CONFERENCE ... PL - ARMANDO ROSELL ... DF - PAUL JOSHUA WISLEY | | Linda G. Morrissey | |
| Wednesday, October 30, 2019 at 2:00 PM<br>    STATUS CONFERENCE ... PL - ARMANDO ROSELL ...DF - PAUL JOSHUA WISLEY | | Linda G. Morrissey | |

## ISSUES

For cases filed before 1/1/2000, ancillary issues may not appear except in the docket.

**Issue # 1.**          Issue: BREACH OF AGREEMENT - CONTRACT (CONTRACT)
                        Filed By: KLM GROUP LP
                        Filed Date: 12/13/2018

| Party Name | Disposition Information |
|---|---|
| **3rd Party Defendant:**<br>AXEL ROYAL LLC | **Disposed: STAYED PENDING ACTION OTHER JURISDICTION, 02/05/2019. Other** |
| **Plaintiff:**<br>KLM GROUP LP | **Disposed: STAYED PENDING ACTION OTHER JURISDICTION, 02/05/2019. Other** |
| **Plaintiff:**<br>KLM MANAGEMENT LLC | **Disposed: STAYED PENDING ACTION OTHER JURISDICTION, 02/05/2019. Other** |
| **Plaintiff:**<br>RIVERCREST LLC | **Disposed: STAYED PENDING ACTION OTHER JURISDICTION, 02/05/2019. Other** |
| **Defendant:**<br>WACO TITLE COMPANY | **Disposed: STAYED PENDING ACTION OTHER JURISDICTION, 02/05/2019. Other** |
| **3rd Party Defendant:**<br>AXEL ROYAL LLC | |
| **Plaintiff:**<br>KLM GROUP LP | |
| **Plaintiff:**<br>KLM MANAGEMENT LLC | |

| Party Name | Disposition Information |
|---|---|
| **Plaintiff:** | |
| RIVERCREST LLC | |
| **Defendant:** | |
| WACO TITLE COMPANY | |

**Issue # 2.**    Issue: BREACH OF AGREEMENT - CONTRACT (CONTRACT)
Filed By: KLM MANAGEMENT LLC
Filed Date: 12/13/2018

| Party Name | Disposition Information |
|---|---|
| **Defendant:** | **Disposed: STAYED PENDING ACTION OTHER** |
| WACO TITLE COMPANY | **JURISDICTION, 02/05/2019. Other** |
| **Defendant:** | |
| WACO TITLE COMPANY | |

**Issue # 3.**    Issue: BREACH OF AGREEMENT - CONTRACT (CONTRACT)
Filed By: RIVERCREST LLC
Filed Date: 12/13/2018

| Party Name | Disposition Information |
|---|---|
| **Defendant:** | **Disposed: STAYED PENDING ACTION OTHER** |
| WACO TITLE COMPANY | **JURISDICTION, 02/05/2019. Other** |
| **Defendant:** | |
| WACO TITLE COMPANY | |

**Issue # 4.**    Issue: OTHER ASSET AGREEMENT (OTHER)
Filed By: WACO TITLE COMPANY
Filed Date: 01/08/2019

| Party Name | Disposition Information |
|---|---|
| **Plaintiff:** | **Disposed: STAYED PENDING ACTION OTHER** |
| KLM GROUP LP | **JURISDICTION, 02/05/2019. Other** |
| **Plaintiff:** | **Disposed: STAYED PENDING ACTION OTHER** |
| KLM MANAGEMENT LLC | **JURISDICTION, 02/05/2019. Other** |
| **Plaintiff:** | **Disposed: STAYED PENDING ACTION OTHER** |
| RIVERCREST LLC | **JURISDICTION, 02/05/2019. Other** |
| **Plaintiff:** | |
| KLM GROUP LP | |
| **Plaintiff:** | |
| KLM MANAGEMENT LLC | |
| **Plaintiff:** | |
| RIVERCREST LLC | |

# DOCKET

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 12-13-2018 | TEXT | CIVIL RELIEF MORE THAN $10,000 INITIAL FILING. | 1 | | |
| 12-13-2018 | CONTRACT | BREACH OF AGREEMENT - CONTRACT | | | |
| 12-13-2018 | DMFE | DISPUTE MEDIATION FEE | | | $ 7.00 |
| 12-13-2018 | PFE1 | PETITION<br>Document Available (#1042303180) TIFF PDF | | | $ 163.00 |
| 12-13-2018 | PFE7 | LAW LIBRARY FEE | | | $ 6.00 |
| 12-13-2018 | OCISR | OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND | | | $ 25.00 |
| 12-13-2018 | OCJC | OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND | | | $ 1.55 |
| 12-13-2018 | OCASA | OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES | | | $ 5.00 |
| 12-13-2018 | SSFCHSCPC | SHERIFF'S SERVICE FEE FOR COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | | | $ 10.00 |
| 12-13-2018 | CCADMINCSF | COURT CLERK ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | | | $ 1.00 |
| 12-13-2018 | CCADMIN0155 | COURT CLERK ADMINISTRATIVE FEE ON $1.55 COLLECTION | | | $ 0.16 |
| 12-13-2018 | SJFIS | STATE JUDICIAL REVOLVING FUND - INTERPRETER AND TRANSLATOR SERVICES | | | $ 0.45 |
| 12-13-2018 | DCADMIN155 | DISTRICT COURT ADMINISTRATIVE FEE ON $1.55 COLLECTIONS | | | $ 0.23 |
| 12-13-2018 | DCADMIN05 | DISTRICT COURT ADMINISTRATIVE FEE ON $5 COLLECTIONS | | | $ 0.75 |
| 12-13-2018 | DCADMINCSF | DISTRICT COURT ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | | | $ 1.50 |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 12-13-2018 | CCADMIN04 | COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS | | | $ 0.50 |
| 12-13-2018 | LTF | LENGTHY TRIAL FUND | | | $ 10.00 |
| 12-13-2018 | SMF | SUMMONS FEE (CLERKS FEE) | | | $ 10.00 |
| 12-13-2018 | SMIMA | SUMMONS ISSUED - MAILED BY ATTORNEY | | | |
| 12-13-2018 | EAA | ENTRY OF APPEARANCE  Document Available (#1042437403) 📄TIFF 📄PDF | | KLM GROUP LP | |
| 12-13-2018 | EAA | ENTRY OF APPEARANCE  Document Available (#1042437407) 📄TIFF 📄PDF | | KLM GROUP LP | |
| 12-13-2018 | TEXT | OCIS HAS AUTOMATICALLY ASSIGNED JUDGE MORRISSEY, LINDA G. TO THIS CASE. | | | |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 12-13-2018 | ACCOUNT | RECEIPT # 2018-3867116 ON 12/13/2018. PAYOR: MICHAEL D OR CINDY GRAY TOTAL AMOUNT PAID: $ 242.14. LINE ITEMS: CJ-2018-5049: $173.00 ON AC01 CLERK FEES. CJ-2018-5049: $6.00 ON AC23 LAW LIBRARY FEE CIVIL AND CRIMINAL. CJ-2018-5049: $1.66 ON AC31 COURT CLERK REVOLVING FUND. CJ-2018-5049: $5.00 ON AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES. CJ-2018-5049: $1.55 ON AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND. CJ-2018-5049: $7.00 ON AC64 DISPUTE MEDIATION FEES CIVIL ONLY. CJ-2018-5049: $0.45 ON AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS. CJ-2018-5049: $2.48 ON AC67 DISTRICT COURT REVOLVING FUND. CJ-2018-5049: $25.00 ON AC79 OCIS REVOLVING FUND. CJ-2018-5049: $10.00 ON AC81 LENGTHY TRIAL FUND. CJ-2018-5049: $10.00 ON AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY. | | | |
| 01-08-2019 | SMF | SUMMONS FEE-2 | | | $ 20.00 |
| 01-08-2019 | SMIP | SUMMONS ISSUED - PRIVATE PROCESS SERVER-2 | | | |
| 01-08-2019 | A | WACO TITLE COMPANY'S ANSWER AND COUNTERCLAIM /THIRD-PARTY PETITION FOR INTERPLEADER / CERTIFICATE OF SERVICE Document Available (#1042567783) TIFF PDF | | WACO TITLE COMPANY | |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 01-08-2019 | TEXT | PROOF OF SERVICE AFFIDAVIT / AS TO WACO TITLE COMPANY / CERT MAIL / SIGNED BY JULIE BAUSER / DEL ON 12-19-18<br>Document Available (#1042567849) 📄TIFF 📄PDF | | WACO TITLE COMPANY | |
| 01-08-2019 | ACCOUNT | RECEIPT # 2019-3877288 ON 01/08/2019.<br>PAYOR: CONNER & WINTERS LLP TOTAL AMOUNT PAID: $ 20.00.<br>LINE ITEMS:<br>CJ-2018-5049: $20.00 ON AC01 CLERK FEES. | | | |
| 01-28-2019 | TEXT | KLM GROUP LP, AND OKLAHOMA LIMITED PARTNERSHIP F/K/A ROYAL MFG CO LP AN OKLAHOMA LIMITED PARTNERSHIP BY AND THROUGH ITS GENERAL PARTNER KLM MANAGMENT LLC F/K/A ROYAL HOLDINGS LLC AN OKLAHOMA LIMITED LIABILITY COMPANY AND RIVERCREST LLC AND OKLAHOMA LIMITED LIABILITY COMPANY'S ANSWER AND CROSS-CLAIM TO COUNTERCLAIM AND THIRD-PARTY PETITION FOR INTERPLEADER OF WACO TITLE COMPANY /CERTIFICATE OF SERVICE<br>Document Available (#1042822485) 📄TIFF 📄PDF | | KLM GROUP LP | |
| 01-28-2019 | AM | KLM GROUP LP AND OKLAHOMA LIMITED PARTNERSHIP F/K/A ROYAL MFG CO LP AN OKLAHOMA LIMITED PARTNERSHIP BY AND THROUGH ITS GENERAL PARTNER KLM MANAGEMENT LLC / F/K/A ROYAL HOLDINGS LLC AND OKLAHOMA LIMITED LIABILITY COMPANY AN RIVERCREST LLC AN OKLAHOMA LIMITED LIABILITY COMPANY'S FIRST AMENDED ANSWER AND CROSS-CLAIM TO COUNTERCLAIM AND THIRD PARTY PETITION FOR INTERPLEADER OF WACO TITLE COMPANY / CERTIFICATE OF SERVICE<br>Document Available (#1042823553) 📄TIFF 📄PDF | | KLM GROUP LP | |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 02-04-2019 | CTFREE | MORRISSEY, LINDA G; NOTICE OF SCHEDULING CONFERENCE ENTERED; THE CASE IS SET FOR A SCHEDULING CONFERENCE ON 4-17-2019 AT 1:30 PM IN COURT ROOM 513; COUNSEL OR PARTIES WITHOUT COUNSEL MUST ATTEND THE SCHEDULING CONFERENCE OR DISPOSITION MAY BE MADE IN THEIR ABSENCE; CLERK FILED THE ORIGINAL NOTICE OF SCHEDULING CONFERENCE AND MAILED A COPY TO ARMANDO J. ROSELL AND PAUL JOSHUA WISLEY; | | | |
| 02-04-2019 | NO | NOTICE OF SCHEDULING CONFERENCE Document Available (#1042829781) TIFF PDF | | | |
| 02-05-2019 | NO | NOTICE TO STATE COURT OF REMOVAL OF ACTION TO FEDERAL COURT / CERTIFICATE OF SERVICE Document Available (#1042829934) TIFF PDF | | AXEL ROYAL LLC | |
| 02-05-2019 | EAA | ENTRY OF APPEARANCE / COVER SHEET Document Available (#1042830046) TIFF PDF | | AXEL ROYAL LLC | |
| 06-14-2019 | O | MINUTE ORDER ( REMANDINGUS DISTRICT COURT, NORTHERN DISTRICT CASE # 19-CV-68-CVE-JFJ BACK TO TULSA COUNTY DISCTRICT COURT ( INCLUDES ORDER & CERTIFIED COPY OF DOCKET SHEET) Document Available (#1044084122) TIFF PDF | | | |
| 06-14-2019 | NO | NOTICE OF SUBPOENA TO PRODUCE DOCUMENTS INFORMATION OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN CIVIL ACTION / CERTIFICATE OF SERVICE Document Available (#1044083301) TIFF PDF | | | |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 07-18-2019 | CTFREE | MORRISSEY, LINDA G; A STATUS CONFERENCE HAS NOW BEEN SET FOR OCTOBER 30TH, 2019 AT 2:00 PM IN COURTROOM 513 BEFORE JUDGE LINDA G. MORRISSEY; COUNSEL OR PARTIES WITHOUT COUNSEL MUST ATTEND THE STATUS CONFERENCE OR DISPOSITION MAY BE MADE IN THEIR ABSENCE; NOTICE OF STATUS CONFERENCE ENTERED; CLERK FILED ORIGINAL NOTICE OF STATUS CONFERENCE AND MAILED COPIES TO ARMANDO ROSELL AND PAUL JOSHUA WISLEY; | | | |
| 07-19-2019 | NO | NOTICE OF STATUS CONFERENCE / STATUS CONFERENSE HAS BEEN SET FOR OCTOBER 30TH 2019 AT 2:00 PM IN COURTROOM 513 / AFFIDAVIT OF MAILING Document Available (#1044475500) 📄TIFF 📄PDF | | | |
| 08-07-2019 | CTFREE | MORRISSEY, LINDA G; A STATUS CONFERENCE HAS NOW BEEN SET FOR OCTOBER 30TH, 2019 AT 2:00 PM IN COURTROOM 513 BEFORE JUDGE LINDA G. MORRISSEY; COUNSEL OR PARTIES WITHOUT COUNSEL MUST ATTEND THE STATUS CONFERENCE OR DISPOSITION MAY BE MADE IN THEIR ABSENCE; NOTICE OF AMENDED STATUS CONFERENCE ENTERED; CLERK FILED ORIGINAL AMENDED NOTICE OF STATUS CONFERENCE AND MAILED COPIES TO ARMANDO ROSELL, MICHAEL GRAY, JOE WHITE, DEREK BURCH, MELISSA HENDRICK, BRIAN CHRISTOPHER FRIES, JAMES MOLONEY, ELLIOT ANDERSON, AND PAUL JOSHUA WISLEY; | | | |
| 08-07-2019 | AM | AMENDED NOTICE OF STATUS CONFERENCE / AFFIDAVIT OF MAILING Document Available (#1044488975) 📄TIFF 📄PDF | | | |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 08-13-2019 | MO | MOTION TO REALIGN PARTIES / A TO J / CERTIFICATE OF SERVICE<br>Document Available (#1044486526) 📄TIFF 📄PDF | | AXEL ROYAL LLC | |
| 08-27-2019 | MO | KLM GROUP LP AN OKLAHOMA LIMITED PARTNERSHIP F/K/A ROYAL MFG CO LP AN OKLAHOMA LIMITED PARTNERSHIP BY AND THROUGH ITS GENERAL PARTNER KLM MANAGEMENT LLC F/K/ A ROYAL HOLDINGS LLC AND OKLAHOMA LIMITED LIABILITY COMPAY AND REIVERCREST LLC AN OKLAHOMA LIMITED LIABILITY COMPANY'S UNOPOSES AGREED MOTION TO EXTEND RESPONSE DEADLINE TO THIRD-PARTY DEFENDANT'S AXEL ROYAL LLC MOTION T RELALIGN PARTIES BY 10 DAYS<br>Document Available (#1044712389) 📄TIFF 📄PDF | | KLM GROUP LP | |
| 08-27-2019 | CTFREE | MORRISSEY, LINDA G; AGREED ORDER EXTENDING PLAINTIFF'S DEADLINE TO RESPONSE TO MOTION TO REALIGN PARTIES BY 10 DAYS ENTERED; THE PLAINTFF'S DEADLINE TO RESPOND TO THE MOTION TO REALIGN PARTIES IS EXTENDED BY 10 DAYS, UNTIL 9-13-19; ((((AGREED ORDER PLACED IN JUDGE'S OUTBOX TO BE PICKED UP FOR FILING)))) | | | |
| 08-28-2019 | O | AGREED ORDER EXTENDING PLAINTIFFS' DEADLINE TO RESPONSE TO MOTION TO REALIGN PARTIES BY 10 DAYS<br>Document Available (#1044701483) 📄TIFF 📄PDF | | | |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 09-12-2019 | OBJ | KLM GROUP LP AND OKLAHOMA LIMITED PARTNERSHIP F/K/A RAYAL MFG CO LP AND OKLAHOMA LIMITED PARTNERSHIP BY AND THROUGHTITS GENERAL PARTNER KLM MANAGEMENT LLC/ F/K/A ROYAL HOLDINGS LLC AND OKLAHOMA LIMITED LIABILITY COMPANY AND RIVERCREST LLC AN OKLAHOMA LIMITED LIABILITY COMPANY'S OBJECTION TO MOTION TO REALIGN PARTIES / CERTIFICATE OF SERVICE<br>Document Available (#1044707254) ▤TIFF ▤PDF | | WACO TITLE COMPANY | |
| 09-17-2019 | APLI | UNOPPOSED APPLICATION OFR LEAVE TO FILE REPLY I SUPPORT OF MOTION TO REALIGN PARTIES / A TO J / CERTIFICATE OF SERVICE<br>Document Available (#1044924634) ▤TIFF ▤PDF | | AXEL ROYAL LLC | |
| 09-18-2019 | CTFREE | MORRISSEY, LINDA G; ORDER ON UNOPPOSED APPLICATION FOR LEAVE TO FILE REPLY IN SPPORT OF MOTION T O REALIGN PARTIES ENTERED; AXEL ROYAL LLC IS GRANTED LEAVE TO FILE REPLY, NO MORE THAN FIVE (5) PAGES IN LENGTH, WITHIN FIVE (5) DAYS, BY 9-23-19; AXEL IS DIRECTED TO SERVE A COPY OF THIS ORDER ON ALL PARTIES OF RECORD; ((((ORDER ON UNOPPOSED APPLICATION PLACED IN JUDGE'S OUTBOX TO BE PICKED UP FOR FILING)))) | | | |
| 09-19-2019 | O | ORDER ON UNOPPOSED APPLICATION FOR LEAVE TO FILE REPLY IN SUPPORT OF MOTION TO REALIGN PARTIES<br>Document Available (#1044925204) ▤TIFF ▤PDF | | | |
| 09-20-2019 | R | AXEL ROYAL LLC'S REPLY TO OBJECTIONS TO MOTION TO REALIGN PARTIES / CERTIFICATE OF SERVICE<br>Document Available (#1044701848) ▤TIFF ▤PDF | | AXEL ROYAL LLC | |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 09-24-2019 | CTFREE | MORRISSEY, LINDA G; ORDER GRANTING MOTION TO REALIGN PARTIES AND REVISING CAPTION ENTERED; KLM GROUP, LP, F/K/A ROYAL MFG CO., LP; KLM MANAGEMENT LLC, F/K/A ROYAL HOLDINGS LLC; AND RIVERCREST , LLC SHALL BE CAPTIONED AS PLAINTIFFS; AXEL ROYAL LLC SHALL BE CAPTIONED AS DEFENDANT; (((((ORDER GRANTING MOTION TO REALIGN PARTIES PLACED IN JUDGE'S OUTBOX TO BE PICKED UP FOR FILING))))) | | | |
| 09-25-2019 | O | ORDER GRANTING MOTION TO REALIGN PARTIES AND REVISING CAPTION<br>Document Available (#1044924091) 📄TIFF 📄PDF | | | |
| 09-26-2019 | CERTS | CERTIFICATE OF SERVICE FOR ORDER REALIGNING PARTIES<br>Document Available (#1044929501) 📄TIFF 📄PDF | | AXEL ROYAL LLC | |



*1042303180*

## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

KLM GROUP, LP, an Oklahoma                  )
Limited Partnership f/k/a ROYAL             )
MFG CO, LP, an Oklahoma Limited             )
Partnership, by and through its General     )
Partner KLM Management LLC f/k/a            )
Royal Holdings LLC, an Oklahoma             )
Limited Liability Company and               )
RIVERCREST LLC, an Oklahoma                 )
Limited Liability Company,                  )
                                            )
                    Plaintiffs,             )
v.                                          )   Case No:
                                            )
WACO TITLE COMPANY,                         )
                                            )
                    Defendant.              )

DISTRICT COURT
**FILED**

DEC 1 3 2018

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

# CJ-2018-05049

Linda Morrissey

### PETITION

### PARTIES; JURISDICTION; VENUE

Plaintiffs, KLM Group, LP, an Oklahoma Limited Partnership f/k/a Royal Mfg Co, LP, an

Oklahoma Limited Partnership by and through its General Partner KLM Management LLC f/k/a

Royal Holdings LLC, an Oklahoma Limited Liability Company ("Royal") and Rivercrest, LLC,

an Oklahoma Limited Liability Company ("Rivercrest") (collectively referred to herein as

"Plaintiffs") for their action against the Defendant, Waco Title Company ("Waco"), an entity

affiliated with Arvest Bank, allege and state as follows:

      1.      Royal is an Oklahoma Limited Partnership having limited partners residing in

Oklahoma.  Rivercrest is an Oklahoma LLC having members who reside in Oklahoma.

      2.      Upon information and belief Waco Title Company is a title company organized in

Arkansas that has not domesticated in Oklahoma.  Waco is a subsidiary and/or affiliate of Arvest

Bank, which does business in Tulsa, Oklahoma.

1

3.      Waco Title is the escrow agent and holds the escrow account for funds relating to the transaction described herein for the purchase of the assets of Plaintiffs.

4.      This action seeks recovery of damages in an amount in excess of $ 2,500,000.

5.      This action is for the recovery and specific performance of funds placed in escrow pursuant to an Escrow Agreement related to an Asset Purchase Agreement ("APA") between Plaintiff and Axel Royal, LLC, a Delaware Limited Liability Company ("Purchaser"). The Asset Purchase Agreement was for the assets of Plaintiffs' business wherein Plaintiff operated a lubricants manufacturing business at certain facilities located in Tulsa, Oklahoma and Schertz, Texas, which transaction occurred in this judicial district. The Escrow Agreement and the APA are to be governed by and construed in accordance with the laws of the State of Oklahoma. They further provide for enforcement in a state court located in Tulsa County having jurisdiction.

6.      Venue is proper in the District Court of Tulsa County.

## FACTUAL ALLEGATIONS

7.      Prior to March 26, 2018, Plaintiffs were the owners of the assets of Royal and Rivercrest.

8.      Pursuant to the APA, Axel entered into an agreement to acquire and did acquire all of Plaintiffs' assets in Royal and Rivercrest as more particularly provided in the APA. As a part of the APA, the parties entered into an Escrow Agreement effective March 26, 2018, with Waco acting as the escrow agent. The APA provided that in addition to the purchase price paid in the APA, an additional Seven Million Dollars ($7,000,000) would be deposited into escrow, Two Million Dollars ($2,000,000) of which would be dedicated to payments related to an inventory reconciliation. A copy of the Escrow Agreement is attached hereto as Exhibit 1.

9.      As a part of the APA and the Escrow Agreement attached thereto, the Parties agreed

that the Escrow Agent was to immediately disburse one-half (1/2) of the remaining non-inventory

escrow funds to Seller on the date that was six months from the date of the closing of the APA,

with the remainder of the non-inventory funds being distributed on a date that is 24 months from

the date of the closing of the APA.  Escrow Agreement, Paragraph 4(f).

10.     The Escrow Agreement further provided in Paragraph 4(f) that the distributions

were to be made unless instructions were given otherwise by an authorized representative of the

Purchaser at least three (3) business days prior to the date which was six months from the date of

closing of the APA.

11.     The APA closed on March 26, 2018.

12.     Contrary to the requirements of the APA and Purchase Agreement, the Purchaser

sent an untimely notice of dispute on September 25, 2018.

13.     The notice by the Purchaser was outside the terms of the Agreement and ineffective

under the terms of the Purchase Agreement which requires strict compliance providing that the

Parties to agreement were entitled to demand exact compliance with the Escrow Agreement.

14.     Along with the exact compliance requirement, the Escrow Agreement also

specifically provided that each party would be entitled to specific performance of the Agreement.

15.     Having failed to comply with the Agreement and to provide timely notice under the

Escrow Agreement, Plaintiffs are entitled to the payout of one-half (1/2) of the non-inventory

escrow funds in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000) at this

time and request the specific performance of the terms of the Escrow Agreement as provided in

the Escrow Agreement.

16.     Plaintiffs are entitled to interest earned on the escrow funds or as otherwise

provided by law both as to pre and post judgment interest.

3

17.    Demand has been made by Plaintiffs for distribution of the subject escrow funds, which Defendant has refused.

18.    Plaintiffs reserve all claims as to the twenty-four (24) month distribution, which has not become due and the non-inventory escrow funds distribution which has not yet been determined.

19.    Plaintiffs have been forced to hire attorneys to bring this action and are entitled to recover their reasonable attorney's fees provided for the prosecution of this action.

WHEREFORE, Plaintiffs respectfully request that they be awarded judgment for specific performance directing the Defendant Escrow Agent to distribute funds in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000) pursuant to the terms of the Escrow Agreement to Plaintiffs as more particularly set forth herein above, attorneys' fees, pre-judgment and post judgment interest as well as any and all other relief to which this Court deems Plaintiffs may be entitled by law or equity.

Respectfully Submitted,

Armando J. Rosell, OBA No. 18821
Michael D. Gray, OBA No. 11326
ROSELL LAW GROUP, L.L.P.
101 N. Robinson Avenue
Suite 700 Corporate Tower
Oklahoma City, Oklahoma 73102
Telephone: 405.702.0888
Facsimile: 405.601.8751
Email: arosell@roselllawgroup.com
Email: mgray@roselllawgroup.com

And

4

Joe E. White, Jr., OBA #12930
White & Weddle, P.C.
630 N.E. 63rd Street
Oklahoma City, Oklahoma  73105
Telephone: 405.858.8899
Facsimile:  405.858.8844
Email: joe@whiteandweddle.com
ATTORNEYS FOR PLAINTIFFS

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**

5

## ESCROW AGREEMENT

This ESCROW AGREEMENT (this "Agreement") is dated as of March 26, 2018, by and among **AXEL Royal LLC**, a Delaware limited liability company ("Purchaser"); **Royal Mfg Co, LP**, an Oklahoma limited partnership ("Royal Mfg"); **Rivercrest, LLC**, an Oklahoma limited liability company ("Rivercrest," and together with Royal Mfg, jointly and severally, "Seller"); and **WACO Title Company**, as escrow agent (the "Escrow Agent").

Under the terms of that certain Asset Purchase Agreement dated as of February 22, 2018 (the "Purchase Agreement"), by and among Purchaser, Seller and Seller's equityholders, Purchaser has agreed to deposit cash in the amount of $7,000,000 into escrow (the "Escrow") with the Escrow Agent, with such funds to be disbursed from time to time in accordance with this Agreement and the Purchase Agreement.

Therefore, in consideration of the foregoing and of the mutual covenants set forth in this Agreement, the parties agree as follows:

1. **Definitions.** Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Purchase Agreement (which meanings are incorporated into this Agreement by this reference).

    (a)    "Authorized Representative" means Tom Schroeder in the case of Purchaser and William R. Mallory, Jr. in the case of Seller, or such other person or persons empowered to authorize, approve or direct actions under this Agreement, on behalf of a party, as established from time to time by written notice to the other parties signed by a duly authorized representative of such party.

    (b)    "Escrow Account" means an interest-bearing escrow account with the Escrow Agent.

    (c)    "Escrow Funds" means the funds deposited into the Escrow Account under Section 2 and any substitutions, replacements, investments or reinvestments of the funds under this Agreement.

2. **Initial Deposit to the Escrow Account.** Immediately upon the execution and delivery of this Agreement, Purchaser shall deliver $7,000,000 to the Escrow Agent by wire transfer of immediately available funds to such account that has been designated in writing by the Escrow Agent for deposit into the Escrow Account. $2,000,000 of such Escrow Funds shall be referred to herein as the "Inventory Reconciliation Escrow Funds" and all other Escrow Funds shall be referred to herein as the "Non-Inventory Escrow Funds." The Escrow Agent is not responsible for the sufficiency of the amount of the Escrow Funds. The Escrow Agent will hold the Escrow Funds in trust and disburse them only as set forth in this Agreement.

3. **Ownership and Registration of the Escrow Funds.** The Escrow Funds shall be the property of the Escrow Account and if not in cash shall be in bearer form or, if registered, shall be registered in the name of the Escrow Agent or its nominee.

4. **Disbursements.** The Escrow Agent shall disburse the Escrow Funds in accordance with the following provisions:

**EXHIBIT**

**1**

(a)     If the Escrow Agent receives a written request for disbursement (a "Disbursement Request") executed by the Authorized Representative of Seller directing that the Escrow Funds (or any portion thereof) be disbursed to Purchaser, the Escrow Agent shall immediately disburse the Escrow Funds (or such portion thereof) to Purchaser pursuant to wire transfer instructions provided by Purchaser. Any Disbursement Request under this Agreement shall identify whether the claim is against the Inventory Reconciliation Escrow Funds or the Non-Inventory Escrow Funds.

(b)     If the Escrow Agent receives a Disbursement Request executed by the Authorized Representative of Purchaser directing that the Escrow Funds (or any portion thereof) be disbursed to Seller, the Escrow Agent shall immediately disburse the Escrow Funds (or such portion thereof) to Seller pursuant to wire transfer instructions provided by Seller.

(c)     If the Escrow Agent receives a Distribution Request jointly executed by the Authorized Representative of Seller and the Authorized Representative of Purchaser, the Escrow Agent shall immediately disburse the Escrow Funds (or such portion thereof) pursuant to the instructions set forth therein.

(d)     Escrow Agent will disburse the Escrow Assets to Purchaser or Seller pursuant to wire transfer instructions provided by such requesting party if (i) Escrow Agent receives a Disbursement Request from such requesting party directing that the Escrow Assets be disbursed to such party, (ii) such Disbursement Request is accompanied by written evidence that the requesting party has delivered a copy of the Disbursement Request to the other party, and (iii) Escrow Agent has not received a timely notice of dispute from such other party in accordance with Section 4(e). Any disbursement under this Section 4(d) will be made on or about (but not before) the tenth (10th) business day following Escrow Agent's actual receipt of the Disbursement Request.

(e)     If Seller or Purchaser in good faith believes, with respect to any Disbursement Request by the other party under Section 4(d) above, that the disbursement of the Escrow Assets to such party is improper for any reason, Seller or Purchaser, as applicable, may deliver notice of the dispute (a "Dispute Notice") to the other party and Escrow Agent. If Escrow Agent receives a Dispute Notice concerning Purchaser's or Seller's Disbursement Request before disbursing the Escrow Assets under Section 4(d), Escrow Agent will hold the Escrow Assets as provided in Section 9(g).

(f)     Subject to Section 4(e) above and the following sentence, the Escrow Agent shall immediately disburse half of the then remaining Non-Inventory Escrow Funds to Seller on the date that is six (6) months from the date of the Closing of the Purchase Agreement, and the remainder of the Non-Inventory Escrow Funds to Seller on the date that is twenty-four (24) months from the date of the Closing of the Purchase Agreement, in each case pursuant to wire transfer instructions provided by Seller, unless (i) instructed otherwise in writing by the Authorized Representative of Purchaser at least three business days prior to such date, or (ii) such remaining Non-Inventory Escrow Funds are being held pursuant to Section 9(g). If there are any claims for which Seller has been notified by Purchaser that are payable from the Escrow pending at the end of such six (6) month or twenty-four (24) month period, respectively, the Escrow shall continue with respect to a portion of the Non-Inventory Escrow Funds, equal to twice the payment in full amount of such pending claim until the resolution of claims payable from the Escrow that were made before that date, and released to Seller in accordance with this Agreement.

(g)     Subject to Section 6, upon the Escrow Agent's disbursement of all of the Escrow Funds, this Agreement shall terminate.

5.     **Income on Escrow Funds.**  Interest income on the Escrow Funds, if any, shall become part of the Escrow Funds.

6.     **Termination.**  This Agreement shall continue in effect so long as the Escrow Agent has not disbursed all of the Escrow Funds under this Agreement.  Sections 7 through 16 of this Agreement shall survive the termination of this Agreement.

7.     **Income Tax Allocation and Reporting.**

(a)     Purchaser and Seller agree that, for tax reporting purposes, all interest income from the Escrow Funds shall, as of the end of each calendar year and to the extent required by the Internal Revenue Service, be reported as having been earned by Seller, whether or not such income was disbursed during such calendar year.

(b)     Purchaser and Seller shall provide the Escrow Agent with certified tax identification numbers by furnishing appropriate forms W-9 or W-8 and such other forms and documents that the Escrow Agent may reasonably request.  Purchaser and Seller understand that if such tax reporting documentation is not provided and certified to the Escrow Agent, the Escrow Agent may be required by the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, to withhold a portion of any interest earned on the Escrow Funds.

8.     **Indemnification Obligations.**  Notwithstanding the joint and several liability of Purchaser and Seller to indemnify the Escrow Agent under Section 9, as between them, Purchaser and Seller each shall bear 50% of any such indemnification obligations and each party shall be entitled to recover from the other party any amounts paid under Section 9 in excess of such paying party's 50% share.

9.     **Duties of the Escrow Agent.**

(a)     The Escrow Agent shall be liable as a depository only, with its duties being only those specifically provided in this Agreement, and which are ministerial in nature and not discretionary.  The Escrow Agent shall not be liable for any mistake of fact or error in judgment, or for any acts or failure to act of any kind it takes in good faith and believes to be authorized or within the rights or powers conferred under this Agreement, unless there be shown willful misconduct or gross negligence.  The Escrow Agent will not be obligated to recognize, and will not have any liability or responsibility arising under, any agreement to which the Escrow Agent is not a party, even though reference thereto may be made in this Agreement.  The Escrow Agent is under no obligation to refer to any documents other than this Agreement and the instructions and requests delivered to the Escrow Agent under this Agreement.

(b)     The Escrow Agent shall not be responsible for the sufficiency or accuracy of the form, execution or validity of the documents or items deposited or delivered under this Agreement; nor for any description of property or other matter noted in the documents or items.  The Escrow Agent shall not be liable for default by Purchaser or Seller because of such party's failure to perform.  The Escrow Agent shall have no responsibility to seek performance by Purchaser or Seller, nor shall it be liable for the termination of any rights under any statutes of

limitation in respect to any funds, documents or items deposited under this Agreement. The Escrow Agent shall not be liable for collection of items until the Escrow Agent receives the cash proceeds of the items. The Escrow Agent shall not be liable for interest on any deposit of money.

(c)   The Escrow Agent shall not be liable in any respect on account of identity, authority or rights of persons executing or delivering, or purporting to execute or delivery, any document or item (which items may be received via facsimile or pdf scan), and may rely absolutely and be fully protected in acting upon any item, document or other writing it reasonably believes to be authentic in performing its duties under this Agreement. The Escrow Agent may, as a condition to the disbursement of money or property, require from the payee or recipient a receipt for the disbursement and, upon final payment or distribution, require a release from any liability arising out of its execution, or performance of its obligations under, this Agreement.

(d)   Purchaser and Seller jointly and severally shall indemnify and hold harmless the Escrow Agent from and against all costs, damages, liabilities and expenses the Escrow Agent incurs or sustains in connection with or arising out of this Agreement, including, but not limited to, any costs, damages, liabilities and expenses that the Escrow Agent incurs as a result of claims or actions by third parties. The Escrow Agent may consult with and engage the services of legal counsel of its choice with respect to any matter pertaining to this Agreement. Purchaser and Seller jointly and severally shall reimburse the Escrow Agent for the reasonable costs and expenses of such legal counsel.

(e)   The Escrow Agent shall be entitled to reimbursement for its out-of-pocket expenses. The Escrow Agent shall have the right to reimburse itself out of any funds in its possession for such costs, expenses and attorney's fees, and shall have a lien on all money, documents or property held in escrow to cover same.

(f)   The Escrow Agent retains the right to resign upon giving at least 30 days' prior written notice to Purchaser and Seller. Within 30 days after receiving this notice, Purchaser and Seller shall jointly appoint a successor escrow agent to which the Escrow Agent may distribute the Escrow Funds. If a successor escrow agent has not been appointed and has not accepted such appointment by the end of this 30 day period, the Escrow Agent may apply to a court of competent jurisdiction for the appointment of a successor escrow agent. Purchaser and Seller jointly and severally shall be responsible for the reasonable costs, expenses and attorneys' fees that the Escrow Agent incurs in connection with this proceeding.

(g)   In the event of disagreement between the parties, or persons claiming under them (or any of them) (in the case of any disagreement between Purchaser and Seller, as evidenced by litigation or other dispute resolution proceeding between such parties or by the delivery by either Purchaser or Seller to the Escrow Agent of written notice asserting that such a disagreement exists), then the Escrow Agent shall hold the Escrow Funds, and all papers in connection with or concerning this escrow, until:

(i)   the parties (through their Authorized Representatives) jointly notify the Escrow Agent in writing that the dispute has been resolved.

(ii)   the Escrow Agent delivers the Escrow Funds, and all papers in connection with or concerning this escrow, to a court in an interpleader action, or

(iii)    the Escrow Agent disburses the Escrow Funds and related papers as directed or otherwise authorized under a final judgment or decree of a court with competent jurisdiction.

10.    **Notices.**  Any notice, request, demand, waiver, consent, approval or other communications required or permitted under this Agreement must be in writing and, unless otherwise provided in this Agreement, will be deemed to have been given and received when (i) delivered personally to the recipient (with written confirmation of receipt); (ii) sent by electronic facsimile transfer (with confirmation of transmission by the transmitting equipment and confirmed in writing by mail or overnight courier service); (iii) mailed by registered or certified mail, return receipt requested and postage prepaid; or (iv) sent by a nationally recognized overnight courier service, charges prepaid.  The notice, request, demand, waiver, consent, approval or other communication must be delivered, sent or mailed to the recipient at the following address or facsimile number (or to such other address or facsimile number as the addressee specifies in a notice given to the sender as provided in this Section 10):

(i)    If to Purchaser, to:

AXEL Royal LLC
1440 Erie, P.O. Box 12337
N. Kansas City, MO 64116
Attention: Tom Schroeder
Facsimile:  816.471.2240
Telephone:  816.471.4590

with copies (which will not constitute notice to Purchaser) to:

Lathrop Gage LLP
2345 Grand Boulevard
Kansas City, MO 64108
Attention:  Dale A. Werts, Esq.
Facsimile:  816-292-2001
Telephone:  816-460-5828

(ii)    If to Seller, to:

Royal Mfg Co, LP
516 S. 25th West Avenue
Tulsa, OK 74127
Attention: William R. Mallory, Jr.
Facsimile: (918) 592-6472
Telephone: (918) 584-2671

with copies (which will not constitute notice to the Seller Parties) to:

McAfee & Taft A Professional Corporation
Two W. Second Street, Suite 1100
Tulsa, OK 74103
Attention: Tracy A. Poole, Esq.
Facsimile: (918) 574-3126
Telephone: (918) 574-3026

(iii)     If to Escrow Agent, to:

WACO Title Company
1164 E. Joyce Blvd.
Fayetteville, AR 72703
Attention: Timothy P. Doyle
Facsimile: (479) 770-6873
Telephone: (479) 770-6781

11.     **Entire Agreement.**  This Agreement, the exhibits and schedules to this Agreement, the Related Documents and other documents and agreements contemplated by this Agreement, the certificates and the other documents delivered under this Agreement constitute the entire agreement among the Parties relative to the specific subject matter hereof and thereof.  Any previous agreement among the Parties relative to the specific subject matter of this Agreement is superseded by this Agreement.

12.     **Strict Compliance; Specific Performance.**  No failure of a Party to exercise any right or to insist upon strict compliance by another Party with any obligations, and no custom or practice of the Parties at variance with this Agreement, shall constitute a waiver of the right of a Party to demand exact compliance.  Waiver by one Party of any particular default by the another Party shall not affect or impair that Party's rights with respect to any subsequent default of the same or of a different nature, nor shall any delay or omission of a Party to exercise any rights arising from such default affect or impair the rights of that Party as to such default or any subsequent default.  In addition to any and all other remedies that may be available at law in the event of any breach of this Agreement, each Party shall be entitled to specific performance of the agreements and obligations of the other Parties under this Agreement and to such other injunctive or other equitable relief as may be granted by a court of competent jurisdiction.

13.     **Governing Law; Jurisdiction.**  This Agreement shall be governed and construed in accordance with the laws of the State of Oklahoma, without regard to any applicable principles of conflicts of law or choice of law that would cause the substantive laws of any other jurisdiction to apply.  Each Party irrevocably submits to the exclusive jurisdiction of any federal or state court in Tulsa County of the State of Oklahoma in any proceeding arising out of or relating to this Agreement or any of the Related Documents.  Each Party irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such proceeding brought in such a court and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum.

14.     **Amendment and Waiver.**  Any provision of this Agreement may be amended and the observance thereof may be waived (either generally or in a particular instance and either retroactively or prospectively), only by the written consent of Seller and Purchaser.  Any amendment or waiver effected in accordance with this Section 9.6 shall be binding upon the Seller Parties, Purchaser and their respective successors and assigns.

15.     **Successors and Assignment.**  The provisions of this Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of the Parties.  Neither this Agreement nor any of the rights, interests, or obligations under this Agreement shall be transferred, delegated, or assigned (by operation of law or otherwise) by any Party without the prior written consent of the other Parties, provided, however, that Purchaser shall have the right to transfer and assign any or all of its rights and obligations under this Agreement to any of its direct or indirect wholly owned subsidiaries,

and that, in the event of any such assignment, Purchaser shall remain liable in full for the performance of the obligations under this Agreement of Purchaser and its assignee. Nothing in this Agreement is intended or shall be construed to give any Person other than the Parties, their successors and permitted assigns, any legal or equitable right, remedy or claim under or in respect of this Agreement or any provision contained in this Agreement.

16.     **Interpretation.**  In the event of an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provisions of this Agreement.  When a reference is made in this Agreement to a section, article, schedule or exhibit, such reference shall be to a section or article of, or schedule or exhibit to, this Agreement.

17.     **Severability.**  In the event that any one or more of the provisions contained in this Agreement, or the application thereof in any circumstances, is held invalid, illegal or unenforceable in any respect for any reason, the parties shall negotiate in good faith with a view to the substitution therefor of a suitable and equitable solution in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid provision; provided, however, that the validity, legality and enforceability of any such provision in every other respect and of the remaining provisions contained in this Agreement shall not be in any way impaired thereby, it being intended that all of the rights and privileges of the Parties shall be enforceable to the fullest extent permitted by law.

18.     **Descriptive Headings.**  The descriptive headings in this Agreement are inserted for convenience only and are not intended to be part of or to affect the meaning or interpretation of this Agreement.

19.     **Counterparts.**  This Agreement may be executed in multiple counterparts, each of which will be deemed to be an original, but all of which together will constitute only one agreement.  The signatures of the Parties need not appear on the same counterpart, and delivery of an executed counterpart signature page by facsimile or portable document format (.pdf) is as effective as executing and delivering this Agreement in the presence of the other Parties.  This Agreement is effective upon delivery to (a) Purchaser of an executed counterpart from the Seller Parties; and (b) the Seller Parties of an executed counterpart from Purchaser.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned parties have executed this Agreement as of the date first above written.

**PURCHASER:**

AXEL Royal LLC

By: *Thomas Schroeder*

Thomas Schroeder, President

**SELLER:**

ROYAL MFG CO, LP

By: Royal Holdings, LLC, an Oklahoma limited liability company, its General Partner

By: *[signature]*

William R. Mallory, Jr., Manager

RIVERCREST, LLC

By: *[signature]*

William R. Mallory, Jr., Manager

**ESCROW AGENT:**

WACO TITLE COMPANY

By: *[signature]*

Name: Timothy P. Doyle

Title: Commercial Office Manager



IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

KLM GROUP, LP, an Oklahoma )
Limited Partnership f/k/a ROYAL )
MFG CO, LP, an Oklahoma Limited )
Partnership, by and through its General )
Partner KLM Management LLC f/k/a )
Royal Holdings LLC, an Oklahoma )
Limited Liability Company and )
RIVERCREST LLC, an Oklahoma )
Limited Liability Company, )
                                        )
                    Plaintiffs,         )
v.                                      )   Case No:
                                        )
WACO TITLE COMPANY,                     )
                                        )
                    Defendant.          )

DISTRICT COURT
**FILED**
DEC 13 2018
DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

CJ-2018-05049
Linda Morrissey

## ENTRY OF APPEARANCE

COME NOW, Armando J. Rosell and Michael D. Gray of the Rosell Law Group, L.L.C.,

and enter their appearance as counsel for Plaintiffs KLM GROUP, LP, an Oklahoma Limited

Partnership f/k/a ROYAL MFG CO, LP, an Oklahoma Limited Partnership, by and through its

General Partner KLM Management LLC f/k/a Royal Holdings LLC, an Oklahoma Limited

Liability Company and RIVERCREST LLC, an Oklahoma Limited Liability Company.

Respectfully submitted,

BY

Armando J. Rosell (OBA #18821)
Michael D. Gray, OBA #11326
ROSELL LAW GROUP, L.L.P.
101 N. Robinson Avenue
Suite 700 Corporate Tower
Oklahoma City, Oklahoma 73102
Telephone: 405.702.0888
Facsimile: 405.601.8751
Email: arosell@roselllawgroup.com
Email: mgray@roselllawgroup.com
Attorneys for Plaintiffs



IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

KLM GROUP, LP, an Oklahoma )
Limited Partnership f/k/a ROYAL )
MFG CO, LP, an Oklahoma Limited )
Partnership, by and through its General )
Partner KLM Management LLC f/k/a )
Royal Holdings LLC, an Oklahoma )
Limited Liability Company and )
RIVERCREST LLC, an Oklahoma )
Limited Liability Company, )
)
Plaintiffs, )
)
v. ) Case No:
)
WACO TITLE COMPANY, )
)
Defendant. )

DISTRICT COURT
**F I L E D**

DEC 1 3 2018

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

CJ-2018-05049

Linda Morrissey

### ENTRY OF APPEARANCE

COMES NOW, Joe E. White, Jr. of the law firm White & Weddle, P.C. and enters his

appearance as counsel for Plaintiffs KLM GROUP, LP, an Oklahoma Limited Partnership f/k/a

ROYAL MFG CO, LP, an Oklahoma Limited Partnership, by and through its General Partner

KLM Management LLC f/k/a Royal Holdings LLC, an Oklahoma Limited Liability Company and

RIVERCREST LLC, an Oklahoma Limited Liability Company.

Respectfully submitted,

Joe E. White, Jr., OBA #12930
White & Weddle, P.C.
630 N.E. 63rd Street
Oklahoma City, Oklahoma  73105
Telephone: 405.858.8899
Facsimile: 405.858.8844
Email: joe@whiteandweddle.com
ATTORNEY FOR PLAINTIFFS





## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

KLM GROUP, LP, an Oklahoma )
Limited Partnership f/k/a ROYAL )
MFG CO, LP, an Oklahoma Limited )
Partnership, by and through its General )
Partner KLM Management LLC f/k/a )
Royal Holdings LLC, an Oklahoma )
Limited Liability Company and )
RIVERCREST LLC, an Oklahoma )
Limited Liability Company, )
)
      Plaintiffs, )
)
v. )
)
WACO TITLE COMPANY )
)
      Defendant. )
)
WACO TITLE COMPANY, )
)
      Counter-Claimant/ )
      Third-Party Plaintiff )
)
v. )
)
KLM GROUP, LP, an Oklahoma )
Limited Partnership f/k/a ROYAL )
MFG CO, LP, an Oklahoma Limited )
Partnership, by and through its General )
Partner KLM Management LLC f/k/a )
Royal Holdings LLC, an Oklahoma )
Limited Liability Company and )
RIVERCREST LLC, an Oklahoma )
Limited Liability Company, )
)
      Counter-Defendants, )
)
and )
)
KLM MANAGEMENT LLC )
f/k/a Royal Holdings LLC, and )
AXEL ROYAL LLC, )
)
      Third-Party Defendants )

DISTRICT COURT
# FILED

JAN - 8 2019

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

CASE NO. CJ-2018-5049
HONORABLE LINDA G. MORRISSEY



## WACO TITLE COMPANY'S ANSWER AND
## COUNTERCLAIM/THIRD-PARTY PETITION FOR INTERPLEADER

Defendant, WACO TITLE COMPANY ("WACO"), states the following for its Answer to the Petition filed by Plaintiffs, KLM GROUP, LP, an Oklahoma Limited Partnership f/k/a ROYAL MFG CO, LP, an Oklahoma Limited Partnership, by and through its General Partner KLM Management LLC f/k/a Royal Holdings LLC, an Oklahoma Limited Liability Company and RIVERCREST LLC, an Oklahoma Limited Liability Company.

1.     WACO is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 1 of the Petition, and therefore denies the same.

2.     In response to Paragraph 2 of the Petition, WACO admits it is an Arkansas corporation and title company with its principal place of business located in Washington County, Arkansas.  WACO denies the allegation that it is an affiliate of Arvest Bank.  WACO admits it is a subsidiary of Arvest Bank.  WACO admits Arvest Bank does business in Tulsa, Oklahoma. WACO admits that WACO has not domesticated in Oklahoma.  WACO has no offices, agents or representatives in Oklahoma.  Accordingly, WACO is not required to domesticate in Oklahoma.

3.     WACO admits it serves as escrow agent for $7,000,000.00 deposited for a transaction between AXEL Royal LLC ("AXEL"), Royal Mfg Co, LP and Rivercrest, LLC. WACO denies the remaining allegations in Paragraph 3 of the Petition.

4.     WACO denies the allegations in Paragraph 4 of the Petition.

5.     WACO admits AXEL, Royal Mfg Co, LP and Rivercrest, LLC entered into an Asset Purchase Agreement ("APA").  WACO states that the language of the APA speaks for itself, and WACO denies any allegations or implications contrary to the provisions thereof. WACO admits Royal Mfg Co, LP, Rivercrest, LLC, AXEL and WACO entered into an Escrow

2

Agreement on or about March 26, 2018. WACO states that the language of the Escrow Agreement speaks for itself, and WACO denies any allegations or implications contrary to the provisions thereof. WACO denies that Plaintiffs are entitled to specific performance or any other relief against WACO. WACO denies the remaining allegations in Paragraph 5 of the Petition.

6.      WACO admits the allegations in Paragraph 6 of the Petition.

7.      WACO is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 7 of the Petition, and therefore denies the same.

8.      WACO states that the language of the APA speaks for itself, and WACO denies any allegations or implications contrary to the provisions thereof. WACO admits Royal Mfg Co, LP, Rivercrest, LLC, AXEL and WACO entered into an Escrow Agreement on or about March 26, 2018, with WACO acting as escrow agent. WACO states that the language of the Escrow Agreement speaks for itself, and WACO denies any allegations or implications contrary to the provisions thereof. WACO denies the remaining allegations in Paragraph 8 of the Petition.

9.      In response to Paragraph 9 of the Petition, WACO states that the language of the APA and Escrow Agreement speaks for itself, and WACO denies any allegations or implications contrary to the provisions thereof.

10.     In response to Paragraph 10 of the Petition, WACO states that the language of the Escrow Agreement speaks for itself, and WACO denies any allegations or implications contrary to the provisions thereof.

11.     WACO is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 11 of the Petition, and therefore denies the same.

12.     WACO denies the allegations in Paragraph 12 of the Petition.

3

13.     WACO denies the allegations in Paragraph 13 of the Petition.

14.     In response to Paragraph 14 of the Petition, WACO states that the language of the Escrow Agreement speaks for itself, and WACO denies any allegations or implications contrary to the provisions thereof.

15.     WACO denies the allegations in Paragraph 15 of the Petition.

16.     WACO denies the allegations in Paragraph 16 of the Petition.

17.     WACO admits Plaintiffs have demanded $2,500,000.00 of the escrow funds. WACO denies the remaining allegations in Paragraph 17 of the Petition.

18.     WACO is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 18 of the Petition, and therefore denies the same.

19.     WACO denies the allegations in Paragraph 19 of the Petition.

20.     WACO denies all other allegations in the Petition, including but not limited to any and all prayers for relief, which are not specifically admitted in this Answer.

## AFFIRMATIVE AND OTHER DEFENSES

1.     Failure to state a claim upon which relief can be granted.

2.     Failure to join a party under 12 O.S. § 2019.

3.     Pending further investigation and discovery, WACO expressly reserves the right to file additional pleadings and assert further defenses.

WHEREFORE, WACO prays Plaintiffs take nothing by way of their Petition, that the Petition be dismissed with prejudice or that judgment be rendered in favor of WACO against Plaintiffs on the Petition, that the costs, attorneys' fees and all other expenses associated with defense of the Petition be awarded to WACO, and for all other relief this Court deems just and equitable.

4

## COUNTERCLAIM/THIRD-PARTY PETITION FOR INTERPLEADER

Counter-Claimant/Third-Party Plaintiff, WACO Title Company, states and alleges the following for its Counterclaim and Third-Party Petition for Interpleader against Counter-Defendants, KLM Group, LP f/k/a Royal Mfg Co, LP and Rivercrest LLC, and Third-Party Defendants, KLM Management LLC f/k/a Royal Holdings LLC and AXEL Royal LLC.

1.      Counter-Claimant/Third-Party Plaintiff, WACO Title Company ("WACO"), is an Arkansas corporation with its principal place of business located in Washington County, Arkansas.

2.      Counter-Defendant, KLM Group, LP f/k/a Royal Mfg Co, LP, is an Oklahoma limited partnership.

3.      Counter-Defendant, Rivercrest, LLC, is an Oklahoma limited liability company.

4.      Third-Party Defendant, KLM Management LLC f/k/a Royal Holdings LLC ("KLM Management"), is an Oklahoma limited liability company.

5.      Third-Party Defendant, AXEL Royal LLC ("AXEL"), is a Delaware limited liability company.

6.      This Court has jurisdiction over the subject matter and parties, and venue is proper.

## COUNT  I – INTERPLEADER

7.      WACO incorporates the paragraphs above by reference as if fully set forth in this Count.

8.      AXEL, Royal Mfg Co, LP and Rivercrest, LLC entered into an Asset Purchase Agreement ("APA") on or about February 22, 2018.

5

9.      In conjunction with the APA, Royal Mfg Co, LP, Rivercrest, LLC, AXEL and WACO entered into an Escrow Agreement on or about March 26, 2018.

10.     Pursuant to the Escrow Agreement, AXEL deposited the sum of $7,000,000.00 into escrow with WACO.

11.     The sum of $7,000,000.00 remains in escrow with WACO (the "Escrow Funds").

12.     Counter-Defendants and Third-Party Defendants all claim ownership to $2,500,000.00 of the Escrow Funds (the "Disputed Funds").

13.     WACO has received conflicting demands from Counter-Defendants and Third-Party Defendants for the Disputed Funds.

14.     On September 25, 26 and 27, 2018, AXEL objected to WACO disbursing any portion of the Escrow Funds to Counter-Defendants or KLM Management.  In addition, AXEL demanded that WACO retain the Escrow Funds until the disagreement between AXEL, Counter-Defendants and KLM Management is resolved. *See* Exhibits 1-3 hereto.

15.     On September 26, 2018, Counter-Defendants and KLM Management demanded that WACO wire the Disputed Funds to Counter-Defendants and KLM Management. *See* Exhibits 4-5 hereto.

16.     On November 26, 2018, Counter-Defendants and KLM Management requested WACO interplead the Disputed Funds into the District Court of Tulsa County, Oklahoma. *See* Exhibit 6 hereto.

17.     WACO may be exposed to double or multiple liabilities unless WACO is allowed to interplead the Disputed Funds.

18.     WACO disclaims any interest in the Disputed Funds.

6

19.    WACO respectfully requests the Court order WACO to interplead the Disputed Funds into the Registry of the Court.   *See* 12 O.S. § 2022(A); *see also* Exhibit 7 hereto, Escrow Agreement at ¶9(g)(ii) (providing for deposit of the Escrow Funds in an interpleader action).

20.    WACO requests it be discharged from this action and from all liability to AXEL, Counter-Defendants and KLM Management upon depositing the Disputed Funds into the Registry of the Court. *See* 12 O.S. § 2022(C).

21.    As provided under 12 O.S. § 2022(C), WACO respectfully requests the Court award costs, including reasonable attorneys' fees, to WACO from the Escrow Funds.

22.    In addition, the Escrow Agreement also provides for WACO to recover its reasonable attorney's fees from the Escrow Funds.  Specifically, the Escrow Agreement states:

(d)    Purchaser and Seller jointly and severally shall indemnify and hold harmless the Escrow Agent from and against all costs, damages, liabilities and expenses the Escrow Agent incurs or sustains in connection with or arising out of this Agreement, including, but not limited to, any costs, damages, liabilities and expenses that the Escrow Agent incurs as a result of claims or actions by third parties.  The Escrow Agent may consult with and engage the services of legal counsel of its choice with respect to any matter pertaining to this Agreement.  Purchaser and Seller jointly and severally shall reimburse the Escrow Agent for the reasonable costs and expenses of such legal counsel.

(e)    The Escrow Agent shall be entitled to reimbursement for its out-of-pocket expenses.  The Escrow Agent shall have the right to reimburse itself out of any funds in its possession for such costs, expenses and attorney's fees, and shall have a lien on all money, documents or property held in escrow to cover same.

*See* Exhibit 7 hereto, Escrow Agreement at ¶9(d)(e).

WHEREFORE, WACO prays the Court: (i) order WACO to interplead the Disputed Funds into the Registry of the Court; (ii) discharge WACO from all liability to AXEL, Counter-Defendants and KLM Management upon depositing the Disputed Funds into the Registry of the

7

Court; (iii) award WACO its costs, including reasonable attorneys' fees, to be paid from the

Escrow Funds; and (iv) award all other relief deemed just and proper by the Court.

Respectfully submitted,
WACO Title Company

By: _P. Joshua Wisley_
P. Joshua Wisley
OBA No. 19602
Conner & Winters, LLP
4375 N. Vantage Dr., Suite 405
Fayetteville, Arkansas 72703
(479) 582-5711
(479) 587-1426 (facsimile)
jwisley@cwlaw.com

8

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of January 2019, a true and correct copy of the above

and foregoing was served via first-class mail, postage pre-paid, upon:

Armando J. Rosell
Michael D. Gray
ROSELL LAW GROUP, L.L.P.
101 N. Robinson Avenue
Suite 700 Corporate Tower
Oklahoma City, OK 73102

Joe E. White
WHITE & WEDDLE, P.C.
630 N.E. 63rd Street
Oklahoma City, OK 73105

P. Joshua Wisley



**LATHROP GAGE**

DALE A. WERTS
PARTNER
DIRECT: 816.460.5828

MAIN: 816.292.2000
FAX: 816.292.2001
DWERTS@LATHROPGAGE.COM
LATHROPGAGE.COM

2345 GRAND BOULEVARD, SUITE 2200
KANSAS CITY, MISSOURI 64108-2618

September 25, 2018

**VIA FEDEX**

WACO Title Company
1164 E. Joyce Blvd.
Fayetteville, AR 72703
Attention: Timothy P. Doyle
Facsimile: (479) 770-6873
Telephone: (479) 770-6781

Re:     Notice of Dispute

Dear Mr. Doyle:

This letter is directed to WACO Title Company as Escrow Agent under that certain Escrow Agreement dated March 26, 2018 (the "Escrow Agreement"), by and among AXEL Royal LLC, a Delaware limited liability company ("Purchaser"), Royal Mfg Co, LP, an Oklahoma limited partnership ("Royal Mfg"); Rivercrest, LLC, an Oklahoma limited liability company ("Rivercrest" and together with Royal Mfg, jointly and severally, the "Seller") and WACO Title Company, as escrow agent (the "Escrow Agent" or "you"). The Escrow Agreement was entered into in connection with the closing under that certain Asset Purchase Agreement dated as of February 22, 2018 (the "Purchase Agreement") by and among Purchaser, Seller, **Royal Holdings, LLC**, an Oklahoma limited liability company, the **Kari L. Harris 2000 Irrevocable Trust**, the **Kristi L. Kincheloe 2000 Irrevocable Trust**, and **William R. Mallory, Jr.** (each an "Equityholder" and collectively, the "Equityholders" and the Equityholders and Seller are collectively, the "Seller Parties"). This Firm represents Purchaser. Capitalized terms used but not defined in this letter shall have the meanings given to them in the Escrow Agreement.

Purchaser has asserted against Seller Parties claims for payment or indemnification, the details of which are more fully described in indemnity demand letters from Purchaser's counsel to Seller Parties dated June 7, 2018, July 30, 2018, and September 5, 2018 (the "Outstanding Indemnity Demands"), copies of which are enclosed for your review.

Because the Outstanding Indemnity Demands exceed, in the aggregate, the Non-Inventory Escrow Funds balance of $5,000,000, Purchaser objects to any future requests by Seller Parties and demands that Escrow Agent hold any requested funds pending resolution of the Outstanding Indemnity Demands pursuant to Section 9(g) of the Escrow Agreement, notwithstanding any contrary instructions from Seller Parties.

EXHIBIT
1



If you have questions, please let us know.

Very truly yours,

Lathrop Gage LLP


By: Dale Werts
     Dale A. Werts


Enclosure

Cc:    William Mallory
       Tracy Poole
       Tom Schroeder
       Johan Stureson
       Clark Hoover

30011870v3



DALE A. WERTS
PARTNER
DIRECT: 816.460.5828

MAIN: 816.292.2000
FAX: 816.292.2001
DWERTS@LATHROPGAGE.COM
LATHROPGAGE.COM

2345 GRAND BOULEVARD, SUITE 2200
KANSAS CITY, MISSOURI 64108-2618

September 26, 2018

**VIA FEDEX**

WACO Title Company
1164 E. Joyce Boulevard
Fayetteville, AR 72703
Attn:  Timothy P. Doyle
Fax:  (479) 770-6873
Phone:  (479) 770-6781

Re:    Escrow under that certain Escrow Agreement dated March 26, 2018 (the "Escrow
       Agreement"), by and among AXEL Royal LLC, a Delaware limited liability
       company ("Purchaser"), Royal Mfg Co, LP, an Oklahoma limited partnership
       ("Royal Mfg"), Rivercrest, LLC, an Oklahoma limited liability company
       ("Rivercrest, and together with Royal Mfg, "Seller"), and WACO Title Company,
       as escrow agent (the "Escrow Agent" or "you")

Dear Mr. Doyle:

This letter supplements my letter of yesterday and the letter you received this morning
from Seller's counsel, Tracy Poole, concerning the escrow under the Escrow Agreement.

Attached to my letter yesterday were copies of the indemnity demands previously
asserted by Purchaser against Seller.  It is true that Seller has accepted responsibility for
a few items, but Seller has rejected responsibility for 90%+ of the indemnity claims.  The
aggregate damages suffered by Purchaser for the indemnity demands that remain
pending easily exceed the escrowed funds.

The indemnity demands are not "unsubstantiated" as Seller's counsel claims.  The
indemnity demand letters describe, for each item, the contractual breach underlying the
indemnity demand.  Seller has denied these breaches, but Purchaser is confident that it
will prevail on the rejected items.  Seller's denial of responsibility does not render the
claims "unsubstantiated," nor does it mean that Purchaser's claims are not pending, or
that they were not asserted in good faith.

The escrow agreement does NOT contemplate an automatic disbursement of escrowed
funds, under any scenario.  Specifically, Section 4(f) says, very clearly, that it is subject
to both Section 4(e) (which contemplates prior notice to Purchaser of any disbursement,
with opportunity to object) and the second sentence of Section 4(f) (which says that any

EXHIBIT
2

30159824v1



Mr. Timothy P. Doyle
September 26, 2018
Page 2

disbursement must take into consideration "any claims for which Seller has been notified by Purchaser"). In this case, pending indemnity claims by Purchaser easily exceed the amount of the escrow funds.

We expect you, as escrow agent, to hold the escrowed funds as contemplated under Section 9(g) pending resolution of the pending indemnity claims (and any claims later asserted). If you, as escrow agent, disburse any of such funds in contravention of the terms of the Escrow Agreement, my client will hold Waco Title responsible for such improperly disbursed funds.

Very truly yours,

Lathrop Gage LLP


By: _____Dale Werts_____
        Dale A. Werts


30159824v1

 **LATHROP GAGE**

DALE A. WERTS
PARTNER
DIRECT: 816.460.5828

MAIN: 816.292.2000
FAX: 816.292.2001
DWERTS@LATHROPGAGE.COM
LATHROPGAGE.COM

2345 GRAND BOULEVARD, SUITE 2200
KANSAS CITY, MISSOURI 64108-2618

September 27, 2018

WACO Title Company
1164 E. Joyce Boulevard
Fayetteville, AR 72703
Attn: Timothy P. Doyle
Fax: (479) 770-6873
Phone: (479) 770-6781

Re:    Escrow under that certain Escrow Agreement dated March 26, 2018 (the "Escrow Agreement"), by and among AXEL Royal LLC, a Delaware limited liability company ("Purchaser"), Royal Mfg Co, LP, an Oklahoma limited partnership ("Royal Mfg"), Rivercrest, LLC, an Oklahoma limited liability company ("Rivercrest, and together with Royal Mfg, "Seller"), and WACO Title Company, as escrow agent (the "Escrow Agent" or "you")

Dear Mr. Doyle:

This letter supplements the correspondence you have received the past two days from me, my Partner, Brian Fries, and from Seller's counsel, Tracy Poole, concerning the escrow under the Escrow Agreement. Thank you for your acknowledgement of that correspondence yesterday, and particularly your confirmation of the Brian Fries email demanding that no disbursement occur until you are advised by both parties that there is no longer a disagreement regarding the Escrow Funds.

The purpose of this letter is to summarize my client's view of some of Escrow Agent's obligations under the Escrow Agreement, and to make sure you have all of the relevant information. This includes correspondence from Purchaser to Seller advising Seller of claims for indemnity from the funds held in Escrow, and Seller's responses, which are attached again for your convenience.

Disbursements of escrowed funds may occur only as permitted under Sections 4 and 9 of the Escrow Agreement.

1.    Under Section 4, clauses (a) through (d), disbursements can occur only if either Seller or Purchaser requests a disbursement (with notice to the other) and such other party doesn't timely object within a 10 day period. In this case, Seller did <u>not</u> provide notice of any disbursement request to Purchaser (at least until yesterday, when Seller's counsel provided you with wire instructions, without stating the amount of disbursement requested), so the 10 day period during which Purchaser could object has not begun. To the extent anyone states

EXHIBIT
3

30166058v1

Mr. Timothy P. Doyle
September 27, 2018
Page 2

otherwise, you clearly have been informed of Purchaser's objection, so disbursement is not appropriate.

    2.    Under Section 4, clause (f), Escrow Agent is to disburse one-half of the escrowed funds ($2,500,000) on the date that is six months after the Closing (September 26, 2018) *unless* either (i) Purchaser instructs otherwise in writing to Escrow Agent at least three days before such date, or (ii) the escrowed funds are being held by Escrow Agent pursuant to Section 9(g).

    In his correspondence with you, Seller's counsel neglected to mention that Section 4(f) has three very important caveats, each of which defeats Seller's disbursement request:

    (a)    Section 4(f) begins with the phrase *"Subject to Section 4(e) above ..."*. Section 4(e) is the clause that gives Purchaser the right to be informed of, and the opportunity to object to, any disbursement sought by Seller. In this case, Seller did not inform Purchaser (until yesterday) that it desires a disbursement, and has yet to state the amount of the desired disbursement. Nonetheless, Purchaser informed Escrow Agent of its objection to any disbursement before Escrow Agent disbursed any Escrow Funds. Therefore, Escrow Agent must hold the Escrow Funds, and not disburse any portion of the Escrow Funds to Seller except, in accordance with Section 9(g).

    (b)    Section 4(f)'s opening phrase continues: *"Subject to ... the following sentence,"*. The referenced sentence states that the escrow must continue with respect to "twice the payment in full amount" of any claims for which Seller has been notified by Purchaser that are payable from the Escrow..." Clearly, you have been informed of indemnity claims for which Seller has been notified previously by Purchaser.[1] (Put another way, Escrow Agent is prohibited by the referenced sentence of Section 4(f) from making any disbursement to Seller (in this case, $2,500,000?) without first reducing the amount of such disbursement by "twice the payment in full amount" of any claims for which Seller has been notified by Purchaser that are payable from the Escrow. This obligation is not dependent in any way on any "three business day" prior notice from Purchaser. The amount of pending claims by Purchaser against Seller exceeds $5,000,000; thus, no disbursement of Escrow Funds is appropriate at this time under Section 4(g).)

    (c)    Section 4(f) also obligates Escrow Agent to NOT disburse Escrow Funds under Section 4(f) if either (i) Purchaser instructs otherwise in writing to Escrow Agent at least three business days before such date, or (ii) the escrowed funds are being held by Escrow Agent pursuant to Section 9(g). The three business day requirement is not applicable here. Under Section 9(g), Escrow Agent must hold the Escrow Funds in strict accordance with Section 9(g) if any disagreement exists between the parties until either both parties instruct otherwise or Escrow Agent delivers the Escrow Funds to a court in

---

[1] Seller's counsel, without explanation, asserts that Purchaser has not asserted any claims that are "payable from the Escrow." This assertion is without merit, given that the very existence of the Escrow is to provide funds with which to address indemnity claims. Whether an indemnity claim is "unsubstantiated" or asserted in "bad faith", as suggested by Seller's counsel, is not an issue for Escrow Agent to determine.

30166058v1



Mr. Timothy P. Doyle
September 27, 2018
Page 3

an interpleader action or in accordance with a court order. Clearly the parties have a
disagreement – we have provided you with copies of indemnity demand letters previously
sent to Seller concerning indemnity claims exceeding the amount of Escrow Funds.
Seller's counsel confirmed the existence of this disagreement, in his correspondence with
you, when he said Seller has rejected Purchaser's claims. Furthermore, the parties clearly
have a disagreement about the proprietary of Seller's escrow disbursement request.

As explained above, Escrow Agent is obligated to hold the Escrow Funds as required
under Section 9(g), pending resolution of the pending indemnity claims (and any claims later
timely asserted by Purchaser). We are discussing the indemnity dispute with Seller's counsel.
Until further notification from both parties, however, consider the Escrow funds as disputed.
Escrow Agent will be held accountable for any Escrow Funds disbursed in contravention of its
obligations under the Escrow Agreement.

Very truly yours,

Lathrop Gage LLP

By:   *Dale Werts*
            Dale A. Werts

Enclosures

30166058v1





WILLIAMS CENTER TOWER II
TWO W. SECOND STREET • SUITE 1100 • TULSA, OK 74103
(918) 587-0000 • FAX (918) 599-9317
www.mcafeetaft.com

TRACY A. POOLE
ATTORNEY AT LAW

WRITER DIRECT
(918) 574-3026
Fax (918) 574-3126
tracy.poole@mcafeetaft.com

September 26, 2018

**VIA EMAIL AND FEDEX OVERNIGHT**

WACO Title Company
1164 E. Joyce Blvd.
Fayetteville, AR 72703
Attention: Timothy P. Doyle
Facsimile: (479) 770-6873
Telephone: (479) 770-6781

RE:   <u>Notice of Dispute</u>

Dear Mr. Doyle:

This letter is directed to WACO Title Company as Escrow Agent under the Escrow Agreement dated March 26, 2018 (the "<u>Escrow Agreement</u>"), by and among AXEL Royal LLC, a Delaware limited liability company ("<u>Purchaser</u>"), Royal Mfg Co, LP, an Oklahoma limited partnership ("<u>Royal Mfg</u>"), Rivercrest, LLC, an Oklahoma limited liability company ("<u>Rivercrest</u>," and together with Royal Mfg, "<u>Seller</u>"), and WACO Title Company, as escrow agent (the "<u>Escrow Agent</u>" or "<u>you</u>"), and in response to Purchaser's Notice of Dispute dated September 25, 2018 (the "<u>Notice</u>").

Pursuant to the Notice, Purchaser attempts to claim that the amount of the Outstanding Indemnity Demands (as defined in the Notice) is in excess of the Non-Inventory Escrow Funds balance of $5,000,000. Not only is such claim unsubstantiated, but Purchaser blatantly ignores the fact that several of the claims set forth in the respective Outstanding Indemnity Demands have been assumed by Seller and thus are not claims for indemnity under the Purchase Agreement.

Moreover, Purchaser's delivery of the Notice was sent outside of normal business hours on the evening prior to an automatic disbursement required under the Escrow Agreement. The manner in which Purchaser delivered the Notice, along with the meritless claims of Purchaser regarding the Outstanding Indemnity Demands, casts doubt on Purchaser having a "good faith" belief that the Escrow Funds to be delivered to Seller are in dispute.

EXHIBIT
4

For these reasons, Seller demands that Escrow Agent initiate a wire transfer to Seller in the amount of half of the Non-Inventory Escrow Funds as is required under <u>Section 4(f)</u> of the Escrow Agreement.  Please contact me directly if you have any questions regarding the contents of this letter.

Best Regards,

Tracy A. Poole

2



TRACY A. POOLE
ATTORNEY AT LAW

WRITER DIRECT
(918) 574-3026
Fax (918) 574-3126
tracy.poole@mcafeetaft.com

WILLIAMS CENTER TOWER II
TWO W. SECOND STREET • SUITE 1100 • TULSA, OK 74103
(918) 587-0000 • FAX (918) 599-9317
www.mcafeetaft.com

September 26, 2018

**VIA EMAIL AND FEDEX OVERNIGHT**

WACO Title Company
1164 E. Joyce Blvd.
Fayetteville, AR 72703
Attention: Timothy P. Doyle
Facsimile: (479) 770-6873
Telephone: (479) 770-6781

RE:    Escrow Disbursement

Dear Mr. Doyle:

This letter is being delivered in response to the letter you received earlier this afternoon from Purchaser's counsel, Dale Wertz, regarding the procedural application of the Escrow Agreement.

The Escrow Agreement provides for four (4) disbursement regimes: (1) Seller makes a Disbursement Request directing you (the Escrow Agent) to disburse funds to Purchaser pursuant to Section 4(a); (2) Purchaser makes a Disbursement request directing you to disburse funds to Seller pursuant to Section 4(b); (3) Seller and Purchaser jointly request that funds be disbursed pursuant to Section 4(c); and (4) pursuant to Section 4(f), the Escrow Agent shall "immediately disburse" to Seller the funds on the date that is six (6) months from Closing of the Purchase Agreement, unless instructed otherwise by Purchaser at least "three (3) business days prior to such date." The immediate disbursement language and timing requirement must be given meaning, and in this case the meaning is that Purchaser's instruction for you to withhold funds was untimely. Section 4(f) does not rely on a previous Disbursement Request having been made and no such Disbursement Request is required.

As for the second sentence of Section 4(f), Seller rejects the notion that Purchaser has legitimate claims pending that are "payable from the Escrow." The wiring instructions for Seller are as follows:



EXHIBIT
5



Account:  Royal Manufacturing Co., LP
Bank:  ███████████
Routing Number:  ███████
Account Number:  ████████

We expect the disbursement will be sent immediately as is required by the Escrow Agreement.

Best Regards,

Tracy A. Poole

2



MCAFEE&TAFT
A PROFESSIONAL CORPORATION

TRACY A. POOLE
ATTORNEY AT LAW

WRITER DIRECT
(918) 574-3026
FAX (918) 574-3126
tracy.poole@mcafeetaft.com

WILLIAMS CENTER TOWER II
TWO W. SECOND STREET • SUITE 1100 • TULSA, OK 74103
(918) 587-0000 • FAX (918) 599-9317
www.mcafeetaft.com

November 26, 2018

<u>VIA EMAIL AND FEDEX OVERNIGHT</u>

WACO Title Company
1164 E. Joyce Blvd.
Fayetteville, AR 72703
Attention: Timothy P. Doyle
Facsimile: (479) 770-6873
Telephone: (479) 770-6781

RE:   Escrow Disbursement

Dear Mr. Doyle:

This letter is directed to WACO Title Company as Escrow Agent under the Escrow Agreement dated March 26, 2018 (the "Escrow Agreement"), by and among AXEL Royal LLC, a Delaware limited liability company ("Purchaser"), Royal Mfg Co, LP, an Oklahoma limited partnership ("Royal Mfg"), Rivercrest, LLC, an Oklahoma limited liability company ("Rivercrest," and together with Royal Mfg, "Seller"), and WACO Title Company, as escrow agent (the "Escrow Agent" or "you"), and in furtherance of our last correspondence dated September 26, 2018.

As you are aware, Purchaser has asserted numerous indemnity claims against Seller that, if legitimate, would be payable out of the escrow funds that are the subject of the Escrow Agreement. Purchaser and Seller have attempted good faith negotiations to resolve such claims, all of which have been to no avail. Through such negotiations and after thorough review of Purchaser's claims against the escrow funds, we continue to assert that such claims are without merit and that the escrow funds due and owing to Seller should be disbursed to Seller per the Escrow Agreement.

It appears the parties will not be able to resolve these claims. As such, we believe the most expeditious resolution would be for you to interplead the first $2,500,000 of the escrow funds that are currently due and owing to Seller per the Escrow Agreement into the Tulsa County District Court.

We kindly ask that you initiate the interpleader action as expeditiously as possible. Please contact me directly if you would like to discuss this matter.



EXHIBIT
6



Best Regards,

Tracy A. Poole

TAP: ll

2

## ESCROW AGREEMENT

This ESCROW AGREEMENT (this "Agreement") is dated as of March 26, 2018, by and among **AXEL Royal LLC**, a Delaware limited liability company ("Purchaser"); **Royal Mfg Co, LP**, an Oklahoma limited partnership ("Royal Mfg"); **Rivercrest, LLC**, an Oklahoma limited liability company ("Rivercrest," and together with Royal Mfg, jointly and severally, "Seller"); and **WACO Title Company**, as escrow agent (the "Escrow Agent").

Under the terms of that certain Asset Purchase Agreement dated as of February 22, 2018 (the "Purchase Agreement"), by and among Purchaser, Seller and Seller's equityholders, Purchaser has agreed to deposit cash in the amount of $7,000,000 into escrow (the "Escrow") with the Escrow Agent, with such funds to be disbursed from time to time in accordance with this Agreement and the Purchase Agreement.

Therefore, in consideration of the foregoing and of the mutual covenants set forth in this Agreement, the parties agree as follows:

1.     **Definitions.** Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Purchase Agreement (which meanings are incorporated into this Agreement by this reference).

(a)     "Authorized Representative" means Tom Schroeder in the case of Purchaser and William R. Mallory, Jr. in the case of Seller, or such other person or persons empowered to authorize, approve or direct actions under this Agreement, on behalf of a party, as established from time to time by written notice to the other parties signed by a duly authorized representative of such party.

(b)     "Escrow Account" means an interest-bearing escrow account with the Escrow Agent.

(c)     "Escrow Funds" means the funds deposited into the Escrow Account under Section 2 and any substitutions, replacements, investments or reinvestments of the funds under this Agreement.

2.     **Initial Deposit to the Escrow Account.** Immediately upon the execution and delivery of this Agreement, Purchaser shall deliver $7,000,000 to the Escrow Agent by wire transfer of immediately available funds to such account that has been designated in writing by the Escrow Agent for deposit into the Escrow Account. $2,000,000 of such Escrow Funds shall be referred to herein as the "Inventory Reconciliation Escrow Funds" and all other Escrow Funds shall be referred to herein as the "Non-Inventory Escrow Funds." The Escrow Agent is not responsible for the sufficiency of the amount of the Escrow Funds. The Escrow Agent will hold the Escrow Funds in trust and disburse them only as set forth in this Agreement.

3.     **Ownership and Registration of the Escrow Funds.** The Escrow Funds shall be the property of the Escrow Account and if not in cash shall be in bearer form or, if registered, shall be registered in the name of the Escrow Agent or its nominee.

4.     **Disbursements.** The Escrow Agent shall disburse the Escrow Funds in accordance with the following provisions:

EXHIBIT

7

(a)    If the Escrow Agent receives a written request for disbursement (a "Disbursement Request") executed by the Authorized Representative of Seller directing that the Escrow Funds (or any portion thereof) be disbursed to Purchaser, the Escrow Agent shall immediately disburse the Escrow Funds (or such portion thereof) to Purchaser pursuant to wire transfer instructions provided by Purchaser. Any Disbursement Request under this Agreement shall identify whether the claim is against the Inventory Reconciliation Escrow Funds or the Non-Inventory Escrow Funds.

(b)    If the Escrow Agent receives a Disbursement Request executed by the Authorized Representative of Purchaser directing that the Escrow Funds (or any portion thereof) be disbursed to Seller, the Escrow Agent shall immediately disburse the Escrow Funds (or such portion thereof) to Seller pursuant to wire transfer instructions provided by Seller.

(c)    If the Escrow Agent receives a Distribution Request jointly executed by the Authorized Representative of Seller and the Authorized Representative of Purchaser, the Escrow Agent shall immediately disburse the Escrow Funds (or such portion thereof) pursuant to the instructions set forth therein.

(d)    Escrow Agent will disburse the Escrow Assets to Purchaser or Seller pursuant to wire transfer instructions provided by such requesting party if (i) Escrow Agent receives a Disbursement Request from such requesting party directing that the Escrow Assets be disbursed to such party, (ii) such Disbursement Request is accompanied by written evidence that the requesting party has delivered a copy of the Disbursement Request to the other party, and (iii) Escrow Agent has not received a timely notice of dispute from such other party in accordance with Section 4(e). Any disbursement under this Section 4(d) will be made on or about (but not before) the tenth (10th) business day following Escrow Agent's actual receipt of the Disbursement Request.

(e)    If Seller or Purchaser in good faith believes, with respect to any Disbursement Request by the other party under Section 4(d) above, that the disbursement of the Escrow Assets to such party is improper for any reason, Seller or Purchaser, as applicable, may deliver notice of the dispute (a "Dispute Notice") to the other party and Escrow Agent. If Escrow Agent receives a Dispute Notice concerning Purchaser's or Seller's Disbursement Request before disbursing the Escrow Assets under Section 4(d), Escrow Agent will hold the Escrow Assets as provided in Section 9(g).

(f)    Subject to Section 4(e) above and the following sentence, the Escrow Agent shall immediately disburse half of the then remaining Non-Inventory Escrow Funds to Seller on the date that is six (6) months from the date of the Closing of the Purchase Agreement, and the remainder of the Non-Inventory Escrow Funds to Seller on the date that is twenty-four (24) months from the date of the Closing of the Purchase Agreement, in each case pursuant to wire transfer instructions provided by Seller, unless (i) instructed otherwise in writing by the Authorized Representative of Purchaser at least three business days prior to such date, or (ii) such remaining Non-Inventory Escrow Funds are being held pursuant to Section 9(g). If there are any claims for which Seller has been notified by Purchaser that are payable from the Escrow pending at the end of such six (6) month or twenty-four (24) month period, respectively, the Escrow shall continue with respect to a portion of the Non-Inventory Escrow Funds, equal to twice the payment in full amount of such pending claim until the resolution of claims payable from the Escrow that were made before that date, and released to Seller in accordance with this Agreement.

(g)     Subject to Section 6, upon the Escrow Agent's disbursement of all of the Escrow Funds, this Agreement shall terminate.

5.     **Income on Escrow Funds.**  Interest income on the Escrow Funds, if any, shall become part of the Escrow Funds.

6.     **Termination.**  This Agreement shall continue in effect so long as the Escrow Agent has not disbursed all of the Escrow Funds under this Agreement. Sections 7 through 16 of this Agreement shall survive the termination of this Agreement.

7.     **Income Tax Allocation and Reporting.**

(a)     Purchaser and Seller agree that, for tax reporting purposes, all interest income from the Escrow Funds shall, as of the end of each calendar year and to the extent required by the Internal Revenue Service, be reported as having been earned by Seller, whether or not such income was disbursed during such calendar year.

(b)     Purchaser and Seller shall provide the Escrow Agent with certified tax identification numbers by furnishing appropriate forms W-9 or W-8 and such other forms and documents that the Escrow Agent may reasonably request. Purchaser and Seller understand that if such tax reporting documentation is not provided and certified to the Escrow Agent, the Escrow Agent may be required by the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, to withhold a portion of any interest earned on the Escrow Funds.

8.     **Indemnification Obligations.**  Notwithstanding the joint and several liability of Purchaser and Seller to indemnify the Escrow Agent under Section 9, as between them, Purchaser and Seller each shall bear 50% of any such indemnification obligations and each party shall be entitled to recover from the other party any amounts paid under Section 9 in excess of such paying party's 50% share.

9.     **Duties of the Escrow Agent.**

(a)     The Escrow Agent shall be liable as a depository only, with its duties being only those specifically provided in this Agreement, and which are ministerial in nature and not discretionary. The Escrow Agent shall not be liable for any mistake of fact or error in judgment, or for any acts or failure to act of any kind it takes in good faith and believes to be authorized or within the rights or powers conferred under this Agreement, unless there be shown willful misconduct or gross negligence. The Escrow Agent will not be obligated to recognize, and will not have any liability or responsibility arising under, any agreement to which the Escrow Agent is not a party, even though reference thereto may be made in this Agreement. The Escrow Agent is under no obligation to refer to any documents other than this Agreement and the instructions and requests delivered to the Escrow Agent under this Agreement.

(b)     The Escrow Agent shall not be responsible for the sufficiency or accuracy of the form, execution or validity of the documents or items deposited or delivered under this Agreement, nor for any description of property or other matter noted in the documents or items. The Escrow Agent shall not be liable for default by Purchaser or Seller because of such party's failure to perform. The Escrow Agent shall have no responsibility to seek performance by Purchaser or Seller, nor shall it be liable for the termination of any rights under any statutes of

limitation in respect to any funds, documents or items deposited under this Agreement. The Escrow Agent shall not be liable for collection of items until the Escrow Agent receives the cash proceeds of the items. The Escrow Agent shall not be liable for interest on any deposit of money.

(c)     The Escrow Agent shall not be liable in any respect on account of identity, authority or rights of persons executing or delivering, or purporting to execute or delivery, any document or item (which items may be received via facsimile or pdf scan), and may rely absolutely and be fully protected in acting upon any item, document or other writing it reasonably believes to be authentic in performing its duties under this Agreement. The Escrow Agent may, as a condition to the disbursement of money or property, require from the payee or recipient a receipt for the disbursement and, upon final payment or distribution, require a release from any liability arising out of its execution, or performance of its obligations under, this Agreement.

(d)     Purchaser and Seller jointly and severally shall indemnify and hold harmless the Escrow Agent from and against all costs, damages, liabilities and expenses the Escrow Agent incurs or sustains in connection with or arising out of this Agreement, including, but not limited to, any costs, damages, liabilities and expenses that the Escrow Agent incurs as a result of claims or actions by third parties. The Escrow Agent may consult with and engage the services of legal counsel of its choice with respect to any matter pertaining to this Agreement. Purchaser and Seller jointly and severally shall reimburse the Escrow Agent for the reasonable costs and expenses of such legal counsel.

(e)     The Escrow Agent shall be entitled to reimbursement for its out-of-pocket expenses. The Escrow Agent shall have the right to reimburse itself out of any funds in its possession for such costs, expenses and attorney's fees, and shall have a lien on all money, documents or property held in escrow to cover same.

(f)     The Escrow Agent retains the right to resign upon giving at least 30 days' prior written notice to Purchaser and Seller. Within 30 days after receiving this notice, Purchaser and Seller shall jointly appoint a successor escrow agent to which the Escrow Agent may distribute the Escrow Funds. If a successor escrow agent has not been appointed and has not accepted such appointment by the end of this 30 day period, the Escrow Agent may apply to a court of competent jurisdiction for the appointment of a successor escrow agent. Purchaser and Seller jointly and severally shall be responsible for the reasonable costs, expenses and attorneys' fees that the Escrow Agent incurs in connection with this proceeding.

(g)     In the event of disagreement between the parties, or persons claiming under them (or any of them) (in the case of any disagreement between Purchaser and Seller, as evidenced by litigation or other dispute resolution proceeding between such parties or by the delivery by either Purchaser or Seller to the Escrow Agent of written notice asserting that such a disagreement exists), then the Escrow Agent shall hold the Escrow Funds, and all papers in connection with or concerning this escrow, until:

(i)     the parties (through their Authorized Representatives) jointly notify the Escrow Agent in writing that the dispute has been resolved,

(ii)     the Escrow Agent delivers the Escrow Funds, and all papers in connection with or concerning this escrow, to a court in an interpleader action, or



(iii)    the Escrow Agent disburses the Escrow Funds and related papers as directed or otherwise authorized under a final judgment or decree of a court with competent jurisdiction.

**10.**    <u>Notices.</u> Any notice, request, demand, waiver, consent, approval or other communications required or permitted under this Agreement must be in writing and, unless otherwise provided in this Agreement, will be deemed to have been given and received when (i) delivered personally to the recipient (with written confirmation of receipt); (ii) sent by electronic facsimile transfer (with confirmation of transmission by the transmitting equipment and confirmed in writing by mail or overnight courier service); (iii) mailed by registered or certified mail, return receipt requested and postage prepaid; or (iv) sent by a nationally recognized overnight courier service, charges prepaid. The notice, request, demand, waiver, consent, approval or other communication must be delivered, sent or mailed to the recipient at the following address or facsimile number (or to such other address or facsimile number as the addressee specifies in a notice given to the sender as provided in this <u>Section 10</u>):

(i)    If to Purchaser, to:

AXEL Royal LLC
1440 Erie, P.O. Box 12337
N. Kansas City, MO  64116
Attention: Tom Schroeder
Facsimile:  816.471.2240
Telephone:  816.471.4590

with copies (which will not constitute notice to Purchaser) to:

Lathrop Gage LLP
2345 Grand Boulevard
Kansas City, MO 64108
Attention:  Dale A. Werts, Esq.
Facsimile:  816-292-2001
Telephone:  816-460-5828

(ii)    If to Seller, to:

Royal Mfg Co, LP
516 S. 25th West Avenue
Tulsa, OK 74127
Attention: William R. Mallory, Jr.
Facsimile: (918) 592-6472
Telephone: (918) 584-2671

with copies (which will not constitute notice to the Seller Parties) to:

McAfee & Taft A Professional Corporation
Two W. Second Street, Suite 1100
Tulsa, OK 74103
Attention: Tracy A. Poole, Esq.
Facsimile: (918) 574-3126
Telephone: (918) 574-3026

       (iii)    If to Escrow Agent, to:

               WACO Title Company
               1164 E. Joyce Blvd.
               Fayetteville, AR 72703
               Attention: Timothy P. Doyle
               Facsimile: (479) 770-6873
               Telephone: (479) 770-6781

      **11.**    **Entire Agreement.** This Agreement, the exhibits and schedules to this Agreement, the Related Documents and other documents and agreements contemplated by this Agreement, the certificates and the other documents delivered under this Agreement constitute the entire agreement among the Parties relative to the specific subject matter hereof and thereof. Any previous agreement among the Parties relative to the specific subject matter of this Agreement is superseded by this Agreement.

      **12.**    **Strict Compliance; Specific Performance.** No failure of a Party to exercise any right or to insist upon strict compliance by another Party with any obligations, and no custom or practice of the Parties at variance with this Agreement, shall constitute a waiver of the right of a Party to demand exact compliance. Waiver by one Party of any particular default by the another Party shall not affect or impair that Party's rights with respect to any subsequent default of the same or of a different nature, nor shall any delay or omission of a Party to exercise any rights arising from such default affect or impair the rights of that Party as to such default or any subsequent default. In addition to any and all other remedies that may be available at law in the event of any breach of this Agreement, each Party shall be entitled to specific performance of the agreements and obligations of the other Parties under this Agreement and to such other injunctive or other equitable relief as may be granted by a court of competent jurisdiction.

      **13.**    **Governing Law; Jurisdiction.** This Agreement shall be governed and construed in accordance with the laws of the State of Oklahoma, without regard to any applicable principles of conflicts of law or choice of law that would cause the substantive laws of any other jurisdiction to apply. Each Party irrevocably submits to the exclusive jurisdiction of any federal or state court in Tulsa County of the State of Oklahoma in any proceeding arising out of or relating to this Agreement or any of the Related Documents. Each Party irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such proceeding brought in such a court and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum.

      **14.**    **Amendment and Waiver.** Any provision of this Agreement may be amended and the observance thereof may be waived (either generally or in a particular instance and either retroactively or prospectively), only by the written consent of Seller and Purchaser. Any amendment or waiver effected in accordance with this Section 9.6 shall be binding upon the Seller Parties, Purchaser and their respective successors and assigns.

      **15.**    **Successors and Assignment.** The provisions of this Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of the Parties. Neither this Agreement nor any of the rights, interests, or obligations under this Agreement shall be transferred, delegated, or assigned (by operation of law or otherwise) by any Party without the prior written consent of the other Parties, provided, however, that Purchaser shall have the right to transfer and assign any or all of its rights and obligations under this Agreement to any of its direct or indirect wholly owned subsidiaries,

and that, in the event of any such assignment, Purchaser shall remain liable in full for the performance of the obligations under this Agreement of Purchaser and its assignee.  Nothing in this Agreement is intended or shall be construed to give any Person other than the Parties, their successors and permitted assigns, any legal or equitable right, remedy or claim under or in respect of this Agreement or any provision contained in this Agreement.

      **16.**    **Interpretation.**  In the event of an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provisions of this Agreement.  When a reference is made in this Agreement to a section, article, schedule or exhibit, such reference shall be to a section or article of, or schedule or exhibit to, this Agreement.

      **17.**    **Severability.**  In the event that any one or more of the provisions contained in this Agreement, or the application thereof in any circumstances, is held invalid, illegal or unenforceable in any respect for any reason, the parties shall negotiate in good faith with a view to the substitution therefor of a suitable and equitable solution in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid provision; provided, however, that the validity, legality and enforceability of any such provision in every other respect and of the remaining provisions contained in this Agreement shall not be in any way impaired thereby, it being intended that all of the rights and privileges of the Parties shall be enforceable to the fullest extent permitted by law.

      **18.**    **Descriptive Headings.**  The descriptive headings in this Agreement are inserted for convenience only and are not intended to be part of or to affect the meaning or interpretation of this Agreement.

      **19.**    **Counterparts.**  This Agreement may be executed in multiple counterparts, each of which will be deemed to be an original, but all of which together will constitute only one agreement.  The signatures of the Parties need not appear on the same counterpart, and delivery of an executed counterpart signature page by facsimile or portable document format (.pdf) is as effective as executing and delivering this Agreement in the presence of the other Parties.  This Agreement is effective upon delivery to (a) Purchaser of an executed counterpart from the Seller Parties; and (b) the Seller Parties of an executed counterpart from Purchaser.

[Signature Page Follows]



IN WITNESS WHEREOF, the undersigned parties have executed this Agreement as of the date first above written.

**PURCHASER:**

AXEL Royal LLC

By: _Thomas Schroeder_
Thomas Schroeder, President

**SELLER:**

ROYAL MFG CO, LP

By: Royal Holdings, LLC, an Oklahoma limited liability company, its General Partner

By: _William R. Mallory, Jr._
William R. Mallory, Jr., Manager

RIVERCREST, LLC

By: _William R. Mallory, Jr._
William R. Mallory, Jr., Manager

**ESCROW AGENT:**

WACO TITLE COMPANY

By: _Timothy P. Ogle_
Name: Timothy P. Ogle
Title: Commercial Office Manager







## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

KLM GROUP, LP, an Oklahoma )
Limited Partnership f/k/a ROYAL )
MFG CO, LP, an Oklahoma Limited )
Partnership, by and through its General )
Partner KLM Management LLC f/k/a )
Royal Holdings LLC, an Oklahoma )
Limited Liability Company and )
RIVERCREST LLC, an Oklahoma )
Limited Liability Company, )
 )
Plaintiffs, )
v. ) Case No: CJ-2018-5049
 )
WACO TITLE COMPANY, )
 )
Defendant. )

DISTRICT COURT
**FILED**
JAN – 8 2019
DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

### PROOF OF SERVICE
### AFFIDAVIT

STATE OF OKLAHOMA )
 ) ss:
COUNTY OF OKLAHOMA )

I, Michael D. Gray, being duly sworn upon his oath, states as follows:

1. I am one of the attorney's representing the Plaintiff with the Oklahoma Bar License No. 11326.

2. I certify that on the 17th day of December, 2018 I deposited in the United States Post Office with postage thereon prepaid, by certified mail, return receipt requested, a true and correct copy of the *Summons and Petition,* filed herein pursuant to Title 12, Oklahoma Statutes, Section 2004, by mailing said documents to:

WACO TITLE COMPANY
Ken F. Calhoun – Registered Service Agent
One Riverfront Place
8th Floor Mercantile Bank Bldg
North Little Rock, Arkansas  72114

1

3.  That on the 19th day of December, 2018, the said registered agent, accepted

service and signed for the said *Summons and Petition.*

IN WITNESS WHEREFORE, I have hereunto set my hand this 2nd day of January,

2019.

Armando J. Rosell (OBA# 18821)
Michael D. Gray (OBA# 11326)
ROSELL LAW GROUP, L.L.P.
101 North Robinson Avenue
Corporate Tower, Suite 700
Oklahoma City, OK  73102
Tel. (405) 702-0888; Fax (405) 601-8751
Email: arosell@roselllawgroup.com
       mgray@roselllawgroup.com
*Attorneys for Plaintiff, KLM GROUP, L.P.*

Subscribed and sworn to before me this 2nd day of January, 2019.

Leslie M. Jones, Notary Public

NOTARY
SEAL
PUBLIC

LESLIE M. JONES
Notary Public in and for the
State of Oklahoma
Commission #07002785
My Commission expires 3/20/2019

My Commission Expires:

March 20, 2019

My Commission Number:

07002785

2

# EXHIBIT

# "A"

3

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Waco Title Company
Ken. F. Calhoun - Reg. Svc. Agent
One Riverfront Place
9th Floor Mercantile Bank Bldg
North Little Rock, AR 72114

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 2826 7069 9371 95

2. Article Number _(Transfer from service label)_
7011 1570 0003 0371 8936

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Julie Bauser_    ☑ Agent
                    ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
_Julie Bauser_                    12/19/2018

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053     Domestic Return Receipt

---

**USPS TRACKING #**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9590 9402 2826 7069 9371 95

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

* Sender: Please print your name, address, and ZIP+4® in this box•

Michael D. Gray
101 N. Robinson Suite 700
Oklahoma City, OK
73102

KLM        ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
_(Domestic Mail Only; No Insurance Coverage Provided)_

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To _Waco Title Company_
Street, Apt. No.;
or PO Box No.
City, State, ZIP+4

7011 1570 0003 0371 8936

PS Form 3800, August 2006     See Reverse for Instructions





## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

KLM GROUP, LP, an Oklahoma )
Limited Partnership f/k/a ROYAL )
MFG CO, LP, an Oklahoma Limited )
Partnership, by and through its General )
Partner KLM Management LLC f/k/a )
Royal Holdings LLC, an Oklahoma )
Limited Liability Company and )
RIVERCREST LLC, an Oklahoma )
Limited Liability Company, )
　　　　　　　　　　　　　　　　　 )
　　　　　　Plaintiffs, )
v. )
　　　　　　　　　　　　　　　　　 )
WACO TITLE COMPANY, )
　　　　　　　　　　　　　　　　　 )
　　　　　　Defendant. )
　　　　　　　　　　　　　　　　　 )
WACO TITLE COMPANY, )
　　　　　　　　　　　　　　　　　 )
　　　　　　Counter-Claimant/ )
　　　　　　Third Party Plaintiff )
　　　　　　　　　　　　　　　　　 )
v. )
　　　　　　　　　　　　　　　　　 )
KLM GROUP, LP, an Oklahoma )
Limited Partnership f/k/a ROYAL )
MFG CO, LP, an Oklahoma Limited )
Partnership, by and through its General )
Partner KLM Management LLC f/k/a )
Royal Holdings LLC, an Oklahoma )
Limited Liability Company and )
RIVERCREST LLC, an Oklahoma )
Limited Liability Company, )
　　　　　　　　　　　　　　　　　 )
　　　　　　Counter-Defendants, )
　　　　　　　　　　　　　　　　　 )
and )
　　　　　　　　　　　　　　　　　 )
KLM MANAGEMENT LLC )
f/k/a Royal Holdings LLC, and )
AXEL ROYAL LLC, )
　　　　　　Third Party Defendants. )

**DISTRICT COURT**
**FILED**

JAN 28 2019

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

Case No:  CJ-2018-5049
Honorable Linda G. Morrissey

1

**KLM GROUP, LP, AN OKLAHOMA LIMITED PARTNERSHIP
F/K/A ROYAL MFG CO, LP, AN OKLAHOMA LIMITED PARTNERSHIP, BY AND
THROUGH ITS GENERAL PARTNER KLM MANAGEMENT LLC F/K/A ROYAL
HOLDINGS LLC, AN OKLAHOMA LIMITED LIABILITY COMPANY AND
RIVERCREST LLC, AN OKLAHOMA LIMITED LIABILITY COMPANY'S ANSWER
AND CROSS-CLAIM TO COUNTERCLAIM AND THIRD-PARTY PETITION FOR
<u>INTERPLEADER OF WACO TITLE COMPANY</u>**

Plaintiffs KLM Group, LP, An Oklahoma Limited Partnership f/k/a Royal Mfg Co, LP, An Oklahoma Limited Partnership, By And Through Its General Partner KLM Management LLC f/k/a Royal Holdings LLC, An Oklahoma Limited Liability Company And Rivercrest LLC, An Oklahoma Limited Liability Company and KLM Management, LLC f/k/a Royal Holdings LLC, Third-Party Defendant (collectively referred to as "KLM/Rivercrest") for their Answer to Waco Title Company's ("Waco") Counterclaim/Third-Party Petition for Interpleader incorporates the allegations contained in their original Petition filed herein on December 13, 2018, and denies each and every material allegation further denying any allegation not otherwise specifically admitted herein and further alleges and states as follows:

1. KLM/Rivercrest admit the allegations contained in paragraph 1 of the Counterclaim/Third-Party Petition.

2. KLM/Rivercrest admit the allegations contained in paragraph 2 of the Counterclaim/Third-Party Petition

3. KLM/Rivercrest admit the allegations contained in paragraph 3 of the Counterclaim/Third-Party Petition

4. KLM/Rivercrest admit the allegations contained in paragraph 4 of the Counterclaim/Third-Party Petition

5. Upon information and belief admits that Axel was formed in Delaware as a Limited Liability Company but denies that Axel maintains a principal place of business in

2

Delaware.  KLM/Rivercrest assert that Axel's primary place of business is located in Oklahoma.

6.      KLM/Rivercrest admit the allegations contained in paragraph 6.

## COUNT 1 - INTERPLEADER

7.      KLM/Rivercrest adopt and incorporate their responses to the Counterclaim/Third Party Petition paragraphs 1-6 in response to paragraph 7

8.      KLM/Rivercrest admit the allegations contained in paragraph 8 asserting that the parties entered into the transaction contemplated in the Asset Purchase Agreement ("APA") on or about February 22, 2018 and further allege and state that the APA closed on March 26, 2018.

9.      KLM/Rivercrest admit the allegations contained in paragraph 9.

10.     KLM/Rivercrest admit the allegations contained in paragraph 10.

11.     KLM/Rivercrest admit the allegations contained in paragraph 11.

12.     KLM/Rivercrest admit the allegations contained in paragraph 12 and further allege and state that KLM/Rivercrest asserts claims to the balance of the funds in the amount of $4,500,000.

13.     KLM/Rivercrest admit the allegations contained in paragraph 13.

14.     KLM/Rivercrest admit that the correspondence was sent as referenced in paragraph 14 and that certain allegations concerning the funds were made by Axel therein. KLM/Rivercrest however deny the accuracy of the claims and assertions contained in the subject correspondence referenced in paragraph 14.

15.     KLM/Rivercrest admit the allegations contained in paragraph 15.

16.     KLM/Rivercrest admit the allegations contained in paragraph 16.

17.     KLM/Rivercrest admit the allegations contained in paragraph 17. KLM/Rivercrest specifically admit that all of the escrow funds or at least the disputed funds should be deposited

and interplead with this Court in accordance with an appropriate Order to determine the claims related to the funds and to provide for appropriate distribution thereof.

18.     KLM/Rivercrest admit the allegations contained in paragraph 18.

19.     KLM/Rivercrest admit the allegations contained in paragraph 19.

20.     KLM/Rivercrest admit the allegations contained in paragraph 20, however, Waco should only be discharged up to the amount of the funds which are deposited into the Registry of the Court.  KLM/Rivercrest asserts that the entirety of the escrow funds should be deposited into the Court's Registry.

21.     KLM/Rivercrest is without sufficient information or belief as concerns the allegations contained in paragraph 21.

22.     KLM/Rivercrest admit the allegations contained in paragraph 22.

WHEREFORE, KLM/Rivercrest pray that Waco be ordered to deposit the escrow funds or at the very least the disputed funds into the Registry of the Court with Waco being discharged from all liability to the remaining parties herein, that Waco be awarded its reasonable attorneys fees and costs from the escrow funds, that the Court determine the rights with regard to the funds, and that the funds be ordered distributed to KLM/Rivercrest pursuant to the terms of the Escrow Agreement as alleged in the original Petition on file herein, along with KLM/Rivercrest's reasonable attorneys fees, pre-judgment post-judgment interest as well as any and all other relief to which this Court deems KLM/Rivercrest may be entitled by law or equity.

## CROSS-CLAIM

KLM/Rivercrest for its Cross-claim against Axel Royal, LLC adopts and incorporates the allegations set forth in the original Petition filed herein and further alleges and states as follows:

4

1.     KLM/Rivercrest are organized under the law of the State of Oklahoma and have limited partners and LLC Members who reside in Oklahoma.

2.     Axel Royal LLC ("Axel") is a limited liability company formed under the laws of the State of Delaware, but has a principal place of business located in Tulsa, Oklahoma.

3.     This action seeks recovery pursuant to an Asset Purchase Agreement ("APA") between KLM/Rivercrest and Axel Royal LLC as well as an Escrow Agreement executed in regard to the subject APA.

4.     The Escrow Agreement and the APA are to be governed by and construed in accordance with the laws of the State of Oklahoma. They further provide for enforcement in a state court located in Tulsa County having jurisdiction.

5.     Venue is proper in the District Court of Tulsa County, Oklahoma.

## FACTUAL ALLEGATIONS

6.     Pursuant to the APA, Axel entered into an agreement to acquire and did acquire all of KLM/Rivercrest's assets in KLM's predecessor, Royal, and Rivercrest as more particularly set forth in the APA.

7.     The APA provided for the purchase of the assets by Axel for a purchase price of $39,065,000.00 to be paid to Seller, along with an escrow fund in the amount of $7,000,000 to be distributed pursuant to the terms of the APA and the Escrow Agreement.

8.     $2,000,000 of the $7,000,000 escrow funds were dedicated to payments related to an inventory reconciliation as referenced in the APA and pursuant to paragraph 5.19 of the APA.

9.     The APA provided that the remaining $5,000,000 escrow amount would be available in regard to indemnification obligations or, otherwise paid to the Seller subject to the terms of the Escrow Agreement and the APA.

5

10.     As a part of the APA and the Escrow Agreement attached thereto, the Parties agreed that the Escrow Agent was to immediately disburse one-half (1/2) of the remaining non-inventory escrow funds to Seller on the date that was six months from the date of the closing of the APA, with the remainder of the non-inventory funds being distributed on a date that is 24 months from the date of the closing of the APA.  Escrow Agreement, Paragraph 4(f).

11.     The Escrow Agreement further provided in Paragraph 4(f) that the distributions were to be made unless instructions were given otherwise by an authorized representative of the Purchaser at least three (3) business days prior to the date which was six months from the date of closing of the APA.

12.     The APA closed on March 26, 2018.

13.     Contrary to the requirements of the APA and Purchase Agreement, the Purchaser sent an untimely notice of dispute on September 25, 2018.

14.     The notice by the Purchaser was outside the terms of the Agreement and ineffective under the terms of the APA which requires strict compliance providing that the Parties to the agreement were entitled to demand exact compliance with the Escrow Agreement.

15.     Along with the exact compliance requirement, the Escrow Agreement also specifically provided that each party would be entitled to specific performance of the Agreement.

16.     Having failed to comply with the Agreement and to provide timely notice under the Escrow Agreement, KLM/Rivercrest are entitled to the payout of one-half (1/2) of the non-inventory escrow funds in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000) at this time and request the specific performance of the terms of the Escrow Agreement as provided in the Escrow Agreement.

17.    KLM/Rivercrest are entitled to interest earned on the escrow funds or as otherwise provided by law both as to pre and post judgment interest.

18.    In an effort to avoid payment of the non-inventory escrow funds, Axel has asserted claims of indemnification as indicated in the letters attached to the Third Party Petition.

19.    Such claims of an indemnification are unsubstantiated and Axel has ignored the fact that with regard to several of such claims the responsibility for such claims has been assumed by KLM/Rivercrest and therefore are not claims for indemnity under the APA.

20.    Accordingly, Axel has improperly misrepresented its rights to indemnification and failed to substantiate such indemnification claims asserting them for the purpose of avoiding payment under the APA and Escrow Agreement.

21.    KLM/Rivercrest is entitled to the non-inventory escrow fund balance of $5,000,000 upon distribution of $2,500,000 based upon the automatic distribution provisions of the Escrow Agreement and the balance of the non-inventory escrow funds of $2,500,000 to the extent Axel cannot substantiate the indemnity claims, or KLM/Rivercrest has assumed liability for any such claims.

22.    Pursuant to the APA and Escrow Agreement, KLM/Rivercrest is entitled to disbursement of the initial $2,500,000 under the terms of the Escrow Agreement followed by the balance of the $2,500,000 remaining based upon Axel's failure to substantiate its claims for indemnification and to the extent KLM/Rivercrest have agreed to assume the liability for any such claims.

23.    The APA required an inventory reconciliation with regard to the payment of the $2,000,000 inventory portion of the escrow funds.

7

24.    Pursuant to paragraph 5.19 of the APA, Inventory Reconciliation, as of December 31, 2018, the parties were to conduct a joint count of the inventory subject to reconciliation and the determination of the inventory that was used, and what inventory remains.

25.    KLM/Rivercrest are entitled under the inventory reconciliation provision to present a claim against the inventory reconciliation escrow fund for the value of any such amounts of the inventory that have been used, along with any interest thereon.

26.    The inventory consists of inventory located at the real properties which were the subject matter of the APA located at KLM/Rivercrest's plants in Tulsa, Oklahoma and Schertz, Texas, which are the subject matter of the APA.

27.    The inventory reconciliation has not occurred.  However, KLM/Rivercrest has determined that Axel has utilized significant portions of the inventory which were in place at the time of the closing of the APA.

28.    KLM/Rivercrest believe that it will be entitled to most, if not all, of the inventory escrow money along with interest earned thereon.

29.    Despite such facts, Axel has failed to reconcile the inventory pursuant to the APA and to release the inventory escrow funds.

30.    Axel's use of the inventory without payment and reconciliation of the escrow funds constitutes a conversion of KLM/Rivercrest's inventory and unjustly enriched Axel to the extent of the use of such inventory.

31.    Pending compliance with the APA and the inventory reconciliation required therein, along with distribution of inventory funds to KLM/Rivercrest, KLM/Rivercrest asserts that it is entitled to a constructive trust on the inventory or the proceeds of such inventory to be secured also by an equitable lien in the personal and real property which are the subject matter of

the APA.

32.     Upon information and belief KLM/Rivercrest alleges that the use of its inventory and the failure of reconciliation by Axel thus far is willful and intentional, that such actions are fraudulent with regard to KLM/Rivercrest, constitute a conversion and justify an award of punitive damages.

33.     KLM/Rivercrest asserts that Axel's claims preventing the disbursement of the escrow funds are a breach of the APA and Escrow Agreement and additionally that the assertion of unsubstantiated indemnification claims give rise to misrepresentation and fraud.

34.     KLM/Rivercrest further asserts that Axel's actions are willful and intentional, justifying an award of punitive damages.

35.     KLM/Rivercrest have been forced to hire attorneys to bring this action and are entitled to recover their reasonable attorneys fees incurred for the prosecution of this action.

36.     Axel has been joined in this action by Waco, but has not yet entered an appearance.  This *Answer and Cross-claim to Counterclaim and Third-Party Petition for Interpleader of Waco Title Company* will be served on Axel once it has entered an appearance.

WHEREFORE, KLM/Rivercrest respectfully requests that they be awarded judgment as prayed for herein against the Defendants in the amount of $7,000,000 and for distribution of the escrow funds and payments thereof, along with attorneys fees, prejudgment interest, and punitive damages on their fraud claims as well as any other and all other relief to which this Court deems KLM/Rivercrest entitled by law or equity.

9

Respectfully submitted,

Armando J. Rosell, OBA No. 18821
Michael D. Gray, OBA No. 11326
ROSELL LAW GROUP, L.L.P.
101 N. Robinson Avenue
Suite 700 Corporate Tower
Oklahoma City, Oklahoma 73102
Telephone: 405.702.0888
Facsimile: 405.601.8751
Email: arosell@roselllawgroup.com
Email: mgray@roselllawgroup.com

And

Joe E. White, Jr., OBA #12930
White & Weddle, P.C.
630 N.E. 63rd Street
Oklahoma City, Oklahoma 73105
Telephone: 405.858.8899
Facsimile:  405.858.8844
Email: joe@whiteandweddle.com
ATTORNEYS FOR PLAINTIFFS,
COUNTER-DEFENDANTS and
THIRD PARTY DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that one the 28th day of January, 2019, a true and correct copy of the above and foregoing was served via first class mail, postage pre-paid thereon, upon:

P. Joshua Wisley
Conner & Winters, LLP
4375 N. Vantage Dr., Suite 405
ATTORNEY FOR DEFENDANT
WACO TITLE COMPANY

Armando J. Rosell

10

IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

KLM GROUP, LP, an Oklahoma )
Limited Partnership f/k/a ROYAL )
MFG CO, LP, an Oklahoma Limited )
Partnership, by and through its General )
Partner KLM Management LLC f/k/a )
Royal Holdings LLC, an Oklahoma )
Limited Liability Company and )
RIVERCREST LLC, an Oklahoma )
Limited Liability Company, )
)
   Plaintiffs, )
v. ) Case No:  CJ-2018-5049
) Honorable Linda G. Morrissey
WACO TITLE COMPANY, )
)
   Defendant. )
)
WACO TITLE COMPANY, )
)
   Counter-Claimant/ )
   Third Party Plaintiff )
)
v. )
)
KLM GROUP, LP, an Oklahoma )
Limited Partnership f/k/a ROYAL )
MFG CO, LP, an Oklahoma Limited )
Partnership, by and through its General )
Partner KLM Management LLC f/k/a )
Royal Holdings LLC, an Oklahoma )
Limited Liability Company and )
RIVERCREST LLC, an Oklahoma )
Limited Liability Company, )
)
   Counter-Defendants, )
)
and )
)
KLM MANAGEMENT LLC )
f/k/a Royal Holdings LLC, and )
AXEL ROYAL LLC, )
   Third Party Defendants. )

DISTRICT COURT
**FILED**

JAN 28 2019

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY



1

**KLM GROUP, LP, AN OKLAHOMA LIMITED PARTNERSHIP
F/K/A ROYAL MFG CO, LP, AN OKLAHOMA LIMITED PARTNERSHIP, BY AND
THROUGH ITS GENERAL PARTNER KLM MANAGEMENT LLC F/K/A ROYAL
HOLDINGS LLC, AN OKLAHOMA LIMITED LIABILITY COMPANY AND
RIVERCREST LLC, AN OKLAHOMA LIMITED LIABILITY COMPANY'S FIRST
AMENDED ANSWER AND CROSS-CLAIM TO COUNTERCLAIM AND THIRD-
PARTY PETITION FOR INTERPLEADER OF WACO TITLE COMPANY**

Plaintiffs KLM Group, LP, An Oklahoma Limited Partnership f/k/a Royal Mfg Co, LP, An

Oklahoma Limited Partnership, By And Through Its General Partner KLM Management LLC f/k/a

Royal Holdings LLC, An Oklahoma Limited Liability Company And Rivercrest LLC, An

Oklahoma Limited Liability Company and KLM Management, LLC f/k/a Royal Holdings LLC,

Third-Party Defendant (collectively referred to as "KLM/Rivercrest") for their Answer to Waco

Title Company's ("Waco") Counterclaim/Third-Party Petition for Interpleader incorporates the

allegations contained in their original Petition filed herein on December 13, 2018, and denies each

and every material allegation further denying any allegation not otherwise specifically admitted

herein and further alleges and states as follows:

      1.     KLM/Rivercrest admit the allegations contained in paragraph 1 of the

Counterclaim/Third-Party Petition.

      2.     KLM/Rivercrest admit the allegations contained in paragraph 2 of the

Counterclaim/Third-Party Petition

      3.     KLM/Rivercrest admit the allegations contained in paragraph 3 of the

Counterclaim/Third-Party Petition

      4.     KLM/Rivercrest admit the allegations contained in paragraph 4 of the

Counterclaim/Third-Party Petition

      5.     Upon information and belief admits that Axel was formed in Delaware as a Limited

Liability Company but denies that Axel maintains a principal place of business in Delaware.

2

KLM/Rivercrest assert that Axel's primary place of business is located in Oklahoma.

6.      KLM/Rivercrest admit the allegations contained in paragraph 6.

## COUNT 1 - INTERPLEADER

7.      KLM/Rivercrest adopt and incorporate their responses to the Counterclaim/Third Party Petition paragraphs 1-6 in response to paragraph 7

8.      KLM/Rivercrest admit the allegations contained in paragraph 8 asserting that the parties entered into the transaction contemplated in the Asset Purchase Agreement ("APA") on or about February 22, 2018 and further allege and state that the APA closed on March 26, 2018.

9.      KLM/Rivercrest admit the allegations contained in paragraph 9.

10.      KLM/Rivercrest admit the allegations contained in paragraph 10.

11.      KLM/Rivercrest admit the allegations contained in paragraph 11.

12.      KLM/Rivercrest admit the allegations contained in paragraph 12 and further allege and state that KLM/Rivercrest asserts claims to the balance of the funds in the amount of $4,500,000.

13.      KLM/Rivercrest admit the allegations contained in paragraph 13.

14.      KLM/Rivercrest admit that the correspondence was sent as referenced in paragraph 14 and that certain allegations concerning the funds were made by Axel therein.  KLM/Rivercrest however deny the accuracy of the claims and assertions contained in the subject correspondence referenced in paragraph 14.

15.      KLM/Rivercrest admit the allegations contained in paragraph 15.

16.      KLM/Rivercrest admit the allegations contained in paragraph 16.

17.      KLM/Rivercrest admit the allegations contained in paragraph 17. KLM/Rivercrest specifically admit that all of the escrow funds or at least the disputed funds should be deposited

and interplead with this Court in accordance with an appropriate Order to determine the claims related to the funds and to provide for appropriate distribution thereof.

18. KLM/Rivercrest admit the allegations contained in paragraph 18.

19. KLM/Rivercrest admit the allegations contained in paragraph 19.

20. KLM/Rivercrest admit the allegations contained in paragraph 20, however, Waco should only be discharged up to the amount of the funds which are deposited into the Registry of the Court. KLM/Rivercrest assert that the earnings of the escrow funds should be deposited into the Court's Registry.

21. KLM/Rivercrest is without sufficient information or belief as concerns the allegations contained in paragraph 21.

22. KLM/Rivercrest admit the allegations contained in paragraph 22.

WHEREFORE, KLM/Rivercrest pray that Waco be ordered to deposit the escrow funds or at the very least the disputed funds into the Registry of the Court with Waco being discharged from all liability to the remaining parties herein, that Waco be awarded its reasonable attorneys fees and costs from the escrow funds, that the Court determine the rights with regard to the funds, and that the funds be ordered distributed to KLM/Rivercrest pursuant to the terms of the Escrow Agreement as alleged in the original Petition on file herein, along with KLM/Rivercrest's reasonable attorneys fees, pre-judgment post-judgment interest as well as any and all other relief to which this Court deems KLM/Rivercrest may be entitled by law or equity.

## CROSS-CLAIM

KLM/Rivercrest for its Cross-claim against Axel Royal, LLC adopts and incorporates the allegations set forth in the original Petition filed herein and further alleges and states as follows:

4

1.      KLM/Rivercrest are organized under the law of the State of Oklahoma and have limited partners and LLC Members who reside in Oklahoma.

2.      Axel Royal LLC ("Axel") is a limited liability company formed under the laws of the State of Delaware, but has a principal place of business located in Tulsa, Oklahoma.

3.      This action seeks recovery pursuant to an Asset Purchase Agreement ("APA") between KLM/Rivercrest and Axel Royal LLC as well as an Escrow Agreement executed in regard to the subject APA.

4.      The Escrow Agreement and the APA are to be governed by and construed in accordance with the laws of the State of Oklahoma.  They further provide for enforcement in a state court located in Tulsa County having jurisdiction.

5.      Venue is proper in the District Court of Tulsa County, Oklahoma.

## FACTUAL ALLEGATIONS

6.      Pursuant to the APA, Axel entered into an agreement to acquire and did acquire all of KLM/Rivercrest's assets in KLM's predecessor, Royal, and Rivercrest as more particularly set forth in the APA.

7.      The APA provided for the purchase of the assets by Axel for a purchase price of $39,065,000.00 to be paid to Seller, along with an escrow fund in the amount of $7,000,000 to be distributed pursuant to the terms of the APA and the Escrow Agreement.

8.      $2,000,000 of the $7,000,000 escrow funds were dedicated to payments related to an inventory reconciliation as referenced in the APA and pursuant to paragraph 5.19 of the APA.

9.      The APA provided that the remaining $5,000,000 escrow amount would be available in regard to indemnification obligations or, otherwise paid to the Seller subject to the terms of the Escrow Agreement and the APA.

10.     As a part of the APA and the Escrow Agreement attached thereto, the Parties agreed that the Escrow Agent was to immediately disburse one-half (1/2) of the remaining non-inventory escrow funds to Seller on the date that was six months from the date of the closing of the APA, with the remainder of the non-inventory funds being distributed on a date that is 24 months from the date of the closing of the APA.  Escrow Agreement, Paragraph 4(f).

11.     The Escrow Agreement further provided in Paragraph 4(f) that the distributions were to be made unless instructions were given otherwise by an authorized representative of the Purchaser at least three (3) business days prior to the date which was six months from the date of closing of the APA.

12.     The APA closed on March 26, 2018.

13.     Contrary to the requirements of the APA and Purchase Agreement, the Purchaser sent an untimely notice of dispute on September 25, 2018.

14.     The notice by the Purchaser was outside the terms of the Agreement and ineffective under the terms of the APA which requires strict compliance providing that the Parties to the agreement were entitled to demand exact compliance with the Escrow Agreement.

15.     Along with the exact compliance requirement, the Escrow Agreement also specifically provided that each party would be entitled to specific performance of the Agreement.

16.     Having failed to comply with the Agreement and to provide timely notice under the Escrow Agreement, KLM/Rivercrest are entitled to the payout of one-half (1/2) of the non-inventory escrow funds in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000) at this time and request the specific performance of the terms of the Escrow Agreement as provided in the Escrow Agreement.

17.     KLM/Rivercrest are entitled to interest earned on the escrow funds or as otherwise

6

provided by law both as to pre and post judgment interest.

18.    In an effort to avoid payment of the non-inventory escrow funds, Axel has asserted indemnification claims as indicated in the letters attached to the Third Party Petition.

19.    Such indemnification claims are unsubstantiated and Axel has ignored the fact that with regard to several of such claims the responsibility for such claims has been assumed by KLM/Rivercrest and, therefore they are not claims for indemnity under the APA.

20.    In this regard, Axel has made claims including indemnification claims with regard to customer satisfaction, employment issues, trademark issues, and regulatory claims related to building codes and environmental issues. ("Indemnification Claims").

21.    These Indemnification Claims are manufactured claims for the purpose of avoiding payment of the escrow funds to KLM/Rivercrest as required by the APA and Escrow Agreement.

22.    Axel was made aware of all building defects and engaged in due diligence and inspection of the building and was aware of all building code compliance issues prior to the closing of the APA.

23.    Axel did due diligence and was made aware of any regulatory issues concerning environmental concerns prior to the closing of the APA.

24.    As further example of Axel's manufactured claim, Axel has asserted an indemnification claim concerning the satisfaction of one of KLM/Rivercrest's customers, Total Specialties USA, Inc ("Total").

25.    The claims concerning Total are clearly manufactured claims.

26.    KLM/Rivercrest provided written documentation from Total regarding KLM/Rivercrest's accounts specifically stating that KLM/Rivercrest were in good standing with Total, with no derogatory implications.

7

27.    In addition to the foregoing Indemnification Claims, the claims with regard to employment issues have been assumed by KLM/Rivercrest.

28.    Accordingly, Axel has improperly misrepresented its rights to indemnification and failed to substantiate such indemnification claims asserting them for the purpose of avoiding payment under the APA and Escrow Agreement.

29.    KLM/Rivercrest is entitled to the non-inventory escrow fund balance of $5,000,000 upon distribution of $2,500,000 based upon the automatic distribution provisions of the Escrow Agreement and the balance of the non-inventory escrow funds of $2,500,000 to the extent Axel cannot substantiate the indemnity claims, or KLM/Rivercrest has assumed liability for any such claims.

30.    Pursuant to the APA and Escrow Agreement, KLM/Rivercrest is entitled to disbursement of the initial $2,500,000 under the terms of the Escrow Agreement followed by the balance of the $2,500,000 remaining based upon Axel's failure to substantiate its claims for indemnification and to the extent KLM/Rivercrest have agreed to assume the liability for any such claims.

31.    The APA required an inventory reconciliation with regard to the payment of the $2,000,000 inventory portion of the escrow funds.

32.    Pursuant to paragraph 5.19 of the APA, Inventory Reconciliation, as of December 31, 2018, the parties were to conduct a joint count of the inventory subject to reconciliation and the determination of the inventory that was used, and what inventory remains.

33.    KLM/Rivercrest are entitled under the inventory reconciliation provision to present a claim against the inventory reconciliation escrow fund for the value of any such amounts of the inventory that have been used, along with any interest thereon.

8

34.     The inventory consists of inventory located at the real properties which were the subject matter of the APA located at KLM/Rivercrest's plants in Tulsa, Oklahoma and Schertz, Texas, which are the subject matter of the APA.

35.     The inventory reconciliation has not occurred.   However, KLM/Rivercrest has determined that Axel has utilized significant portions of the inventory which were in place at the time of the closing of the APA.

36.     KLM/Rivercrest believe that it will be entitled to most, if not all, of the inventory escrow money along with interest earned thereon.

37.     Despite such facts, Axel has failed to reconcile the inventory pursuant to the APA and to release the inventory escrow funds.

38.     Axel's use of the inventory without payment and reconciliation of the escrow funds constitutes a conversion of KLM/Rivercrest's inventory and unjustly enriched Axel to the extent of the use of such inventory.

39.     Pending compliance with the APA and the inventory reconciliation required therein, along with distribution of inventory funds to KLM/Rivercrest, KLM/Rivercrest asserts that it is entitled to a constructive trust on the inventory or the proceeds of such inventory to be secured also by an equitable lien in the personal and real property which are the subject matter of the APA.

40.     Upon information and belief KLM/Rivercrest alleges that the use of its inventory and the failure of reconciliation by Axel thus far is willful and intentional, that such actions are fraudulent with regard to KLM/Rivercrest, constitute a conversion and justify an award of punitive damages.

41.     KLM/Rivercrest asserts that Axel's claims preventing the disbursement of the

9

escrow funds are a breach of the APA and Escrow Agreement and additionally that the assertion of unsubstantiated indemnification claims give rise to misrepresentation and fraud.

42.    KLM/Rivercrest further asserts that Axel's actions are willful and intentional, justifying an award of punitive damages.

43.    KLM/Rivercrest have been forced to hire attorneys to bring this action and are entitled to recover their reasonable attorneys fees incurred for the prosecution of this action.

44.    Axel has been joined in this action by Waco, but has not yet entered an appearance. This *Answer and Cross-claim to Counterclaim and Third-Party Petition for Interpleader of Waco Title Company* will be served on Axel once it has entered an appearance.

WHEREFORE, KLM/Rivercrest respectfully requests that they be awarded judgment as prayed for herein against the Defendants in the amount of $7,000,000 and for distribution of the escrow funds and payments thereof, along with attorneys fees, prejudgment interest, and punitive damages on their fraud claims as well as any other and all other relief to which this Court deems KLM/Rivercrest entitled by law or equity.

Respectfully submitted,

Armando J. Rosell, OBA No. 18821
Michael D. Gray, OBA No. 11326
ROSELL LAW GROUP, L.L.P.
101 N. Robinson Avenue
Suite 700 Corporate Tower
Oklahoma City, Oklahoma 73102
Telephone: 405.702.0888
Facsimile: 405.601.8751
Email: arosell@roselllawgroup.com
Email: mgray@roselllawgroup.com

10

And

Joe E. White, Jr., OBA #12930
White & Weddle, P.C.
630 N.E. 63rd Street
Oklahoma City, Oklahoma 73105
Telephone: 405.858.8899
Facsimile:  405.858.8844
Email: joe@whiteandweddle.com
ATTORNEYS FOR PLAINTIFFS,
COUNTER-DEFENDANTS and
THIRD PARTY DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that one the 28th day of January, 2019, a true and correct copy of the above
and foregoing was served via first class mail, postage pre-paid thereon, upon:

P. Joshua Wisley
Conner & Winters, LLP
4375 N. Vantage Dr., Suite 405
ATTORNEY FOR DEFENDANT
WACO TITLE COMPANY

_____
Armando J. Rosell

11